Richard D. ROHR, Plaintiff–Appellant,

v.

TED NEITERS MOTOR CO., d/b/a Centennial Lincoln–Mercury–Toyota, Defendant–Appellee.

No. 84CA0706.

Colorado Court of Appeals, Div. II.

June 2, 1988.

Davis & Ceriani, Dan L. Cartin, Gary J. Ceriani, Denver, for plaintiff-appellant.

Miller & Leher, Kathryn E. Miller, Martin P. Miller, Littleton, for defendant-appellee.

VAN CISE, Judge.

In this action for the collection of wages pursuant to § 8–4–101, et seq., C.R.S. (1986 Repl.Vol. 3B), plaintiff, Richard D. Rohr, was awarded a net judgment of $18,069.81 plus interest after the allowance of a set off/counterclaim in favor of defendant, Ted Neiters Motor Co., d/b/a Centennial Lincoln–Mercury–Toyota (Centennial), and the denial of any penalty or attorney fees. Rohr appeals the allowance of the set off/counterclaim and the denial of the penalty and attorney fees. We affirm in part and reverse in part.

In the fall of 1978, Rohr was hired as general manager and operator of Centennial's automobile dealership. It was orally agreed that his compensation would be $2,000 per month, plus a monthly bonus of 10% of the first $10,000 of profit and 20% of all additional profit before income tax. By a written agreement dated October 10, 1979, the bonus was made payable by March 15 of the year following that in which it was earned.

Rohr resigned, effective December 30, 1979. On that date, he issued checks to himself in an attempt to collect the balance of the 1980 bonus which he believed was due. Centennial stopped payment on those checks.

Rohr contended that his compensation had been unlawfully withheld, entitling him to the 50% penalty and attorney fees prescribed in §§ 8–4–104(3) and 8–4–114, C.R.S. (1986 Repl.Vol. 3B), in addition to the unpaid amount of his bonus. Centennial claimed that it was not liable for any penalty or attorney fees because (1) it had legal justification in withholding any compensation, see § 8–4–104(3), C.R.S. (1986 Repl. Vol. 3B), and (2) the money due Rohr was not "wages" but rather was "deferred compensation" as provided for in § 8–4–105(3), C.R.S. (1986 Repl.Vol. 3B). Further, it claimed it had suffered $25,000 in damages as the result of certain transactions concerning a Peterbilt tractor and a Corvette auto (Martin transactions) which Rohr had improperly authorized.

After a trial to the court, judgment was entered in favor of Rohr and against Centennial for bonus withheld in the amount of $42,923. The court then found Rohr had caused Centennial to suffer a loss on the Martin transactions, and entered judgment for Centennial on its counterclaim in the sum of $24,853.19. In addition, it refused to award any penalty or attorney fees to Rohr. This appeal followed.

## I.

Rohr first asserts that the trial court erred in finding that the bonus was part of a "profit sharing plan" or "deferred compensation" rather than "wages" and, therefore, not subject to the provisions of § 8–4–101, et seq., C.R.S. We agree.

Section 8–4–101(9), C.R.S. (1986 Repl.Vol. 3B), provides:

" 'Wages' or 'compensation' means all amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, *or other method of calculating* the same or whether the labor or service is performed under contract, subcontract, partnership, subpartnership, station plan, or other

agreement for the performance of labor or service if the labor or service to be paid for is performed personally by the person demanding payment." (emphasis supplied)

In determining whether a bonus is wages or compensation as contemplated by § 8–4–101(9), several factors must be considered. Two characteristics of wages or compensation are that it be "both vested and determinable as of the date of termination." *Hartman v. Freedman*, 197 Colo. 275, 591 P.2d 1318 (1979). Rohr's bonus was earned and, therefore, became vested and determinable as of the date of termination, even though not due and payable for two and one-half months thereafter. *See Hartman v. Freedman, supra.*

Another indication that the bonus is "wages or compensation" is the disproportionately large amount of the year-end payment in relation to the base salary. *See Simon v. Riblet Tramway Co.*, 8 Wash. App. 289, 505 P.2d 1291 (1973) (Green, C.J., concurring). In 1980, Rohr earned $24,000 salary and $61,408 in bonus.

In addition, the record reveals the bonus was owed as compensation for services performed by Rohr as required by § 8–4–101(9). *See also SCOA Industries, Inc. v. Bracken*, 374 A.2d 263 (Del.1977).

Section 8–4–105(3), C.R.S. (1986 Repl.Vol. 3B) provides:

"Nothing in this article shall apply to compensation payments due an employee under a profit-sharing plan, a pension plan, or other similar deferred compensation programs."

This section was enacted to "remove complex contingent benefits from the remedial provisions of the article." *Hartman v. Freedman, supra.* The agreement here provided for compensation for Rohr alone, in contrast to a profit-sharing plan which is a complex contingent benefit an employer offers to all or a substantial segment of its employees.

We conclude that the bonus here constituted "wages" or "compensation" as defined in § 8–4–101(9), rather than "deferred compensation" referred to in § 8–4–105(3). Therefore, Centennial is subject to liability for penalties and attorney fees if the other statutory requirements are met.

## II.

Next, Rohr contends the trial court erred in entering judgment against him on Centennial's counterclaim based on Rohr's breach of duty owed to it as his principal on the Martin transactions. We do not agree.

In August 1980, Rohr negotiated a purchase by Centennial of a 1977 Peterbilt tractor and a simultaneous sale to Martin and another, financed with recourse to, and an unconditional guarantee from, Centennial. The purchasers defaulted and Centennial suffered a loss in excess of $20,000.

In November 1980, Rohr arranged a purchase by Centennial of a new Corvette and the sale thereof to Martin as a used car. Financing was through the same credit company, with recourse to, and unconditional guarantee from, Centennial. Again the purchaser defaulted and Centennial incurred a loss of approximately $4,000.

The trial court found:

"Rohr had authority to conduct the day-to-day activities and business of Centennial. Centennial was a new car dealership selling Lincolns, Mercurys and Toyotas. Centennial conducted a used car lot in connection with the incident to its new car retail sales business. Rohr had no general managerial authority; he did not hire the corporation attorney; he did not formulate general policy for Centennial. Rohr was expressly directed not to execute unconditional guarantees incident to financing car sales.... The Peterbilt and Corvette transactions were beyond the scope of his authority for the reason he executed unconditional guarantees in connection with those transactions. Additionally, the Peterbilt transaction was beyond the scope of his authority for it was a motor vehicle of a type never traded by Centennial. Centennial was in the business of selling new Lincoln, Mercury and Toyotas and used cars, including small trucks and pickups but never a vehicle of the character of a used Peter-

bilt tractor with a 350 Cummins diesel engine.... In this case, the conduct of the parties, Centennial and Rohr, defined the scope of authority of Rohr."

These findings are supported by the evidence, and are binding on review. *Hartman v. Freedman, supra.*

The court then held, and we agree:

"When an agent acts beyond the scope of his authority and his principal suffers or incurs a loss thereby, the agent is liable to the principal for the loss. In this case, Rohr is liable for the loss of $24,853.19 suffered by Centennial because of Rohr's conduct beyond the scope of his authority."

*See White v. Brock,* 41 Colo.App. 156, 584 P.2d 1224 (1973); Restatement (Second) of Agency § 401 (1958).

### III.

 Rohr also contends that he is entitled to a penalty of 50% of the $42,923 awarded him by the trial court or, at least, on a lesser amount which he claims both parties had acknowledged was undisputed, due, and owing on or before March 15, 1981. We disagree.

Under § 8-4-104(3), if an employer refuses to pay wages or compensation "without a good faith legal justification for such refusal," the employer is liable to the employee for a 50% penalty in addition to the compensation. However, "if there is a bona fide dispute as to wages due, and the employer tenders the amount admittedly due, then no penalty is assessed." *Brogan v. Bill Eger Motors, Inc.,* 39 Colo.App. 104, 561 P.2d 377 (1977). *See also Hofer v. Polly Little Realtors, Inc.,* 37 Colo.App. 86, 543 P.2d 114 (1975). Here, contrary to Rohr's assertions, there was no amount admitted to be due on the day in question.

The trial court found that "there was a bona fide dispute as to bonus due and payable on March 15, 1981. Centennial was in good faith and had tenable claims based on the [Martin transactions] and its contention with respect to the computation of the bonus. These three claims exceeded the unpaid bonus." These findings are supported by substantial evidence and are,

therefore, binding on review. *Hartman v. Freedman, supra.* Therefore, Centennial is not liable for a penalty under § 8-4-104(3).

### IV.

Rohr's final contention is that he is entitled to reasonable attorneys fees pursuant to § 8-4-114, C.R.S. (1986 Repl.Vol. 3B). We agree. That section provides:

"Whenever it is necessary for an employee to commence a civil action for the recovery or collection of wages and penalties due as provided by sections 8-4-104 and 8-4-105, the judgment in such action shall include a reasonable attorney fee in favor of the winning party, to be taxed as part of the costs of the action."

Here, although Rohr did not receive all he asked for, he did recover a net judgment in excess of $18,000 plus interest. Therefore, he is the winning party.

In *Keeton v. Rike,* 38 Colo.App. 505, 559 P.2d 262 (1977), we said that: "[I]n providing that the judgment 'shall include a reasonable attorney's fee in favor of the winning party,' [§ 8-4-114] leaves nothing to the discretion of the trial court except to determine what is a reasonable fee." *See also Hofer v. Polly Little Realtors, Inc., supra.* Accordingly, the trial court erred in refusing to award Rohr any attorney fees.

### V.

Rohr's other contentions of error are without merit.

The judgment is reversed as to attorney fees, and the cause is remanded for determination of an appropriate award to Rohr. In all other respects, the judgment is affirmed.

KELLY, C.J., and SMITH, J., concur.