**Martha L. MONTEMAYOR, Plaintiff–Appellee and Cross–Appellant,**

v.

**JACOR COMMUNICATIONS, INC., a Delaware corporation; NSN Network Services, Ltd., a Delaware corporation; Robert L. Lawrence and William Suffa, Defendants–Appellants and Cross–Appellees.**

**No. 00CA1434.**

Colorado Court of Appeals,
Div. III.

Oct. 24, 2002.

Certiorari Denied Feb. 24, 2003.*

---

* Justice KOURLIS would grant as to the following issues:

Whether the trial court erred in awarding damages under a Colorado Wage Claim Act claim in an amount greater than those awarded by the jury for breach of contract.

Whether stock options which have not been issued are "earned" "wages or compensation" within the meaning of the Colorado Wage Claim Act.

Waldbaum, Corn, Koff & Berger, P.C., Michael H. Berger, Scot M. Peterson, Denver, Colorado; Clanahan Tanner Downing & Knowlton, Richard L. Shearer, Dino A. Ross, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Hall and Evans, L.L.C., Alan Epstein, Daniel R. Satriana, Jr., Denver, Colorado, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge JONES.

Defendants, Jacor Communications, Inc.; NSN Network Services, LTD.; Robert L. Lawrence; and William Suffa, appeal from a judgment in favor of plaintiff, Martha L. Montemayor, on a jury verdict awarding damages for breach of contract and the trial court's award of certain damages. Plaintiff cross-appeals the trial court's refusal to grant a new trial on damages. We affirm in part, vacate in part, and remand for further proceedings.

NSN was incorporated in 1988. In 1990 the NSN board of directors appointed plaintiff president, an office to which the board reappointed her annually and that she held until October 1997. Plaintiff was removed from that position shortly after Jacor Broadcasting of Knoxville, Inc., a subsidiary of Jacor, and NSN entered into an asset purchase agreement. After the acquisition, the Jacor subsidiary changed its corporate name to NSN.

At the time of the acquisition, plaintiff entered into an Executive Employment and Non Competition Agreement (Agreement) with NSN that provided that she was to act as a senior executive officer of NSN for a period of two years, or until NSN discharged her for cause or disability, or until she terminated the Agreement for "good reason," which included leaving within six months of "any material reduction in the scope of [her] duties and responsibilities for the Company from those duties undertaken by [her] for the Company on the date of this Agreement."

Pursuant to the Agreement, plaintiff was to be consulted on all "major strategic decisions" regarding NSN. The Agreement further provided that NSN would pay plaintiff a base salary of $100,000 and an annual bonus. The Agreement also stated that the "senior management of [Jacor] ... shall recommend to the Compensation Committee of the Board of Directors of [Jacor] (which shall retain discretion over the grant of any options) that within [twelve] months of the date of this Agreement, Employee be granted incentive stock options for 8,000 shares of [Jacor] common stock under the [Jacor] 1993 Employee Stock Option Plan."

Shortly after the acquisition, an NSN vice president and its sales manager engaged in ongoing harassment directed against plaintiff. NSN took no real steps to abate the harassment. Jacor directed its human resources director to disregard plaintiff's complaint concerning the harassment, having decided that was no longer a "formal complaint."

Thereafter, Jacor's president ordered plaintiff to work closely with the sales manager, even though NSN had determined he had been harassing her. NSN's general manager then informed plaintiff that she was no longer president of NSN, that management had eliminated her authority to make any decisions, that no employees would report to or work for her, and that her job

duties were limited to acting as a resource and consultant to the sales staff.

Plaintiff then terminated the Agreement with NSN, citing "good reason." She filed this action, claiming interference with contract, breach of contract, conspiracy, and a violation of the Colorado Wage Claim Act (CWCA), § 8–4–101, et seq., C.R.S.2002.

The parties stipulated to submit the conspiracy and contract claims to the jury and the CWCA claim to the trial court as finder of fact. The trial court entered judgment in favor of plaintiff on the jury's verdict concerning the breach of contract claim and the conspiracy claim against Jacor, although the jury made no finding of damages as to the conspiracy claim. The court also found in favor of plaintiff after a hearing on the CWCA issues.

Defendants appeal the judgment and damages entered against them. Plaintiff cross-appeals the trial court's denial of her motion for mistrial and its refusal to grant a new trial on damages related to the jury verdict on her civil conspiracy claim against Jacor.

## I.

Defendants first contend that plaintiff did not present sufficient evidence to establish a prima facie case of breach of contract. We disagree.

■ To prove breach of contract, a plaintiff must show: (1) the existence of a contract; (2) performance by the plaintiff or justifiable nonperformance; (3) the defendant's failure to perform the contract; and (4) damages to the plaintiff. *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053 (Colo. 1992).

■ The intent of the parties to a contract must be determined from the contract itself. If the terms of a contract are complete, clear, and unambiguous, no extraneous evidence may be considered in ascertaining the intent of the contracting parties. *Christie v. San Miguel County Sch. Dist.*, 759 P.2d 779, 782 (Colo.App.1988)(citing *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978)).

■ In ascertaining whether certain provisions of an agreement are ambiguous, the language of the instrument must be examined and construed in harmony with the plain and generally accepted meaning of the words employed. Written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language. *Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373 (Colo.2000).

■ When "a promisor is himself the cause of the failure of performance of a condition upon which his own liability depends, he cannot take advantage of that failure." *Navajo Freight Lines, Inc. v. Moore*, 170 Colo. 539, 543, 463 P.2d 460, 462 (1970); *see also Hofer v. Polly Little Realtors, Inc.*, 37 Colo.App. 86, 543 P.2d 114 (1975)(employer cannot discharge employee to avoid payment of compensation otherwise due).

### A.

■ Defendants first assert that NSN did not breach its contract with plaintiff when it demoted her from company president to sales consultant. They argue that, regardless of the status at which plaintiff was hired, pursuant to the Agreement, all terms regarding her employment remained subject to the authority of the board of directors and senior officers, therefore reserving to NSN discretion and final authority concerning her employment. We disagree.

The record reflects that plaintiff, in being demoted and required to work under the direct supervision of the persons who harassed her, was deprived of the specific responsibilities she contracted for, namely (1) that she would act as a senior executive; and (2) that NSN senior management would "consult with [her] and other senior employees ... on major strategic decisions."

■ Ordinarily, an employment agreement does not obligate an employer to furnish work for an employee. However, such an obligation may be inferred depending on the circumstances under which the agreement is made or the nature of the employment itself. When the anticipated nonmonetary benefits to the employee are a material part of the

advantage to be received from employment, an employment contract has an implied promise to provide work. The anticipated benefits may be, among other things, the "acquisition of skill or reputation by the employee," or the opportunity to earn performance bonuses. *Van Steenhouse v. Jacor Broad., Inc.*, 958 P.2d 464, 467–68 (Colo.1998)(quoting Restatement (Second) of Agency § 433 (1953)).

The ruling in *Van Steenhouse* is not perfectly analogous to the facts in this case because the employee there, a radio personality and call-in show host, was deprived by her employer, a broadcasting company, of contracted-for air time. However, as here, the radio host there lost certain anticipated benefits, such as the valuable opportunity to "build and maintain her professional marketability" with exposure to the community and the opportunity to earn performance bonuses based on audience share during her show. *Van Steenhouse v. Jacor Broad., Inc., supra,* 958 P.2d at 468.

While the demotion, as here, of a corporate executive to a sales consultant may not have the same quantifiable impact on a career, the principle of law relied on in *Van Steenhouse* is, nevertheless, applicable. Thus, under the Agreement, NSN had an implied obligation to furnish work because, salary aside, plaintiff would materially benefit from performing the duties described in the Agreement, i.e., to act as a senior executive officer and to be consulted on all "major strategic decisions" regarding NSN. If she had been allowed to perform those duties, plaintiff would have gained valuable experience as an executive officer, she would have enhanced her professional reputation, and she might have positioned herself for opportunities elsewhere as a corporate executive.

Therefore, because the Agreement implied a promise to provide plaintiff with executive-level work, the failure to provide that work is an actionable breach of contract. We conclude that NSN breached the Agreement by its failure to provide executive-level work, strategic decision-making responsibility, and all of the promised nonmonetary material advantages of the job. In addition, by its failure to provide the agreed upon work to plaintiff, NSN deprived her of the ability to fulfill her basic obligations under the Agreement.

Moreover, we conclude that plaintiff's demotion from president to sales consultant, which stripped her of all decision-making and managerial responsibilities, and which the parties did not contemplate when they agreed that she would act as an executive, constituted a breach of contract. *See Hayes v. Res. Control, Inc.*, 170 Conn. 102, 365 A.2d 399 (1976)(any unjustified reduction of rank or material change in duties of executive employee, not originally contemplated by parties, constitutes breach of contract); *Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 1, 330 N.Y.S.2d 33, 280 N.E.2d 867 (1972).

## B.

■ Defendants also assert that NSN did not breach the Agreement by constructively discharging plaintiff. We disagree.

■ "To prove a constructive discharge, a plaintiff must present sufficient evidence establishing deliberate action on the part of an employer which makes or allows an employee's working conditions to become so difficult or intolerable that the employee has no other choice but to resign." *Wilson v. Bd. of County Comm'rs*, 703 P.2d 1257, 1259 (Colo.1985)(citing *Irving v. Dubuque Packing Co.*, 689 F.2d 170 (10th Cir.1982)).

■ A successful argument of constructive discharge "depends upon whether a reasonable person under the same or similar circumstances would view the . . . working conditions as intolerable." *Boulder Valley Sch. Dist. R–2 v. Price*, 805 P.2d 1085, 1088 (Colo.1991)(quoting *Wilson v. Bd. of County Comm'rs, supra* ), *overruled in part on other grounds by Cmty. Hosp. v. Fail*, 969 P.2d 667 (Colo.1998). Cumulative events can cause working conditions to deteriorate to an intolerable level. *Hogue v. MQS Inspection*, 875 F.Supp. 714 (D.Colo.1995).

Plaintiff's complaint presented issues of breach of contract and constructive discharge. Defendants did not object to the

jury instruction issued by the trial court, which stated in pertinent part:

For the plaintiff ... to recover from the defendant ... on her claim for breach of an employment contract for a definite period of time, then you must find that all of the following have been proved by a preponderance of the evidence:

1. The plaintiff and the defendant entered into a contract of employment;

2. The contract provided that the employment would continue for a definite period of time;

3. a. The defendant committed a material breach of the contract or

b. The defendant constructively discharged the plaintiff before the end of that period of time; and

4. Until discharged plaintiff substantially performed her part of the contract.

The jury apparently found that sufficient evidence had been presented to satisfy the elements.

The record reveals that an NSN vice president and the NSN sales manager waged a campaign to undermine plaintiff's authority; to paint her as unstable, unethical, incompetent, and lacking in credibility; to humiliate her publicly in the eyes of her subordinates; and to eliminate her authority and demote her. Plaintiff continued substantially to perform her part of the Agreement, reporting to work daily and attempting to fulfill her assigned work, even when teamed with the harassing sales manager, who later was required to take an indefinite leave of absence.

We conclude that, under the circumstances revealed by the record, defendants created an environment that a reasonable person in the same or similar circumstances would view as intolerable. Thus, based on the intolerable circumstances, plaintiff was constructively discharged from her position.

C.

■ Defendants further assert that plaintiff did not present sufficient evidence to show that their failure to issue her stock options was a breach of contract. We disagree.

Here, the Agreement provided that, as a benefit of plaintiff's employment, "[t]he senior management of [Jacor] *shall* recommend to the Compensation Committee" that plaintiff be granted the incentive stock options.

Defendant Lawrence's testimony confirmed that NSN breached the Agreement when no member of the senior management committee recommended to the compensation committee that plaintiff receive the stock options. Lawrence further admitted that he did not recall the compensation committee ever having refused to grant stock options upon the senior management committee's recommendation. We conclude that this evidence was sufficient to prove that NSN breached the Agreement.

We note that, had defendants not constructively discharged plaintiff before her two-year tenure expired, senior management might have made the required recommendation, and the compensation committee could have declined to issue the options, without breaching the Agreement. However, because defendants breached the Agreement, they may not depend upon their own failure to protect themselves from their obligations under the Agreement. *See Navajo Freight Lines, Inc. v. Moore, supra.* Thus, the trial court did not err in entering judgment in favor of plaintiff as to breach of contract.

II.

■ We disagree with defendants' contention that the trial court erred as a matter of law when it awarded plaintiff the value of her stock options pursuant to the CWCA, § 8–4–104, C.R.S.2002. We agree with plaintiff that stock options may be considered as compensation under the CWCA.

■ The parties stipulated to submit the CWCA claim to the trial court as finder of fact. We defer to the trial court's findings of fact unless we determine that they are so clearly erroneous as to find no support in the record. *See Peterson v. Ground Water Comm'n,* 195 Colo. 508, 579 P.2d 629 (1978). We, however, are not bound by the trial court's conclusions of law. *See Todd Holding Co. v. Super Valu Stores, Inc.,* 874 P.2d 402 (Colo.App.1993).

The CWCA provides that, if employment is terminated by the employer, "the wages or compensation for labor or service earned and unpaid at the time of such discharge is due and payable immediately." Section 8–4–104(1)(a), C.R.S.2002. Wages or compensation "means all amounts for labor or service performed by employees ... if the labor or service to be paid for is performed personally by the person demanding payment." Section 8–4–101(9), C.R.S.2002; *see also Rohr v. Ted Neiters Motor Co.*, 758 P.2d 186 (Colo.App. 1988).

▆▆▆ The purpose of the CWCA is to assure the timely payment of wages and provide adequate judicial relief when wages are not paid, and it should be liberally construed to carry out its purpose. *Hofer v. Polly Little Realtors, Inc., supra.*

Here, the trial court found that the value of the stock options in question constituted wages or compensation within the meaning of § 8–4–101(9).

Plaintiff asserts that courts in other jurisdictions routinely protect an employee's stock option rights from being circumvented by wrongful termination. *See e.g., Haft v. Dart Group Corp.*, 877 F.Supp. 896, 903 (D.Del. 1995). Thus, one court stated that, when stock options have been issued but not exercised, "[t]he proposition that an employee would contract with his employer and assume the risk of losing his stock options if the employer terminated him without cause is 'inconceivable.'" *Haft v. Dart Group Corp., supra*, 877 F.Supp. at 903.

Colorado courts have considered the status of stock options for the purposes of property division in dissolution of marriage cases. For instance, when options have been awarded for past services, their value is marital property. However, "[a] nonvested interest is an expectancy and not property because the holder has no enforceable rights." *In re Marriage of Miller*, 915 P.2d 1314, 1318 (Colo.1996)(citing *In re Marriage of Jones*, 812 P.2d 1152 (Colo.1991)).

Furthermore, accrued vacation pay falls within the definition of wages or compensation, because "vacation pay—like wages—is both vested and determinable as of the date of termination." *Hartman v. Freedman*, 197 Colo. 275, 279, 591 P.2d 1318, 1321 (1979).

Similarly, a bonus constitutes wages or compensation as contemplated by § 8–4–101(9), if it is "both vested and determinable as of the date of termination," "disproportionately large ... in relation to the base salary," and "owed as compensation for services performed by [the employee] as required by § 8–4–101(9)," rather than pursuant to a profit-sharing plan. *Rohr v. Ted Neiters Motor Co., supra*, 758 P.2d at 188.

Here, the Agreement referred to "incentive stock options," pursuant to "Section 422" of the Internal Revenue Code, which defines an incentive stock option as "an option granted to an individual for any reason connected with his employment by a corporation, if granted by the employer corporation or its parent or subsidiary corporation." 26 U.S.C. § 422(b) (2002).

The Agreement provided that, in addition to compensation for plaintiff's services at a minimum annual base salary of $100,000, "[d]uring the Employment Period, Employee shall be entitled to such additional benefits, including without limitation ... participation in stock option and stock purchase plans in amounts determined by the Compensation Committee of the Board of Directors of [Jacor] in its discretion, paid vacation and holidays." Additionally, the Agreement described a separate bonus plan that applied to three executive employees.

The Agreement differentiates between plaintiff's compensation for services and the "additional benefits" to which she was entitled. Further, the Agreement specifies that decisions regarding the stock option plan were subject to the compensation committee's discretion.

However, the options were to be for a definite number of shares. Further, the value of the stock options, $518,531, is not in dispute and is large in comparison to plaintiff's annual base salary. *See Rohr v. Ted Neiters Motor Co., supra*, 758 P.2d at 188. When received, the options would be taxable income pursuant to 26 U.S.C. § 83 (2002). *See Hartman v. Freedman, supra* (emphasizing taxability of accrued, unpaid vacation

when determining it should be within CWCA).

Moreover, the Agreement lists both the obligation to recommend stock options and the paid vacation and holidays as benefits of equal importance in the same sentence. Because vacation pay is within the ambit of the CWCA and also contemplated within the Agreement to be "wages and compensation," we agree with the trial court that the same is contemplated by the Agreement as to stock options, which, therefore, fall within the CWCA as well.

Thus, we conclude that defendants denied plaintiff compensation for her labor under the CWCA, and the trial court did not err when it held that the stock options were within the CWCA. *See Hofer v. Polly Little Realtors, Inc., supra.*

Therefore, the trial court did not err when it awarded plaintiff the value of the stock options.

### III.

Defendants next contend that the trial court erred in not finding that the breach of contract claim subsumed plaintiff's CWCA claim for the same damages. Specifically, defendants argue that because the jury rejected plaintiff's request for stock option damages under the other claims, the trial court was precluded from awarding those damages under the CWCA claim. We perceive no error.

Res judicata refers to "claim preclusion." The doctrine holds that:

[A]n existing judgment is conclusive of the rights of the parties in any subsequent suit on the same claim. It bars relitigation not only of all issues actually decided, but of all issues that might have been decided. It requires an identity of parties or their privies, as it would be unfair to preclude a party from litigating an issue merely because he could have litigated it against a different party.

*Pomeroy v. Waitkus,* 183 Colo. 344, 350, 517 P.2d 396, 399 (1973) (citation omitted).

Here, the trial court considered two distinct issues within the same proceeding.

Thus, we conclude that the doctrine of res judicata does not apply to this situation.

Further, the trier of fact must determine all issues relative to the sufficiency, credibility, and weight of the evidence. *See Cottonwood Hill, Inc. v. Ansay,* 709 P.2d 62 (Colo.App.1985).

At the outset, the parties stipulated that the jury would consider breach of contract, while the trial court would make all factual determinations regarding the CWCA claim, including the amount recoverable under the CWCA. Having weighed the evidence, the jurors awarded damages to plaintiff in an amount that suggests that they were not convinced by all of plaintiff's arguments regarding her economic damages from the breach of contract. However, the trial court, weighing the same evidence in light of the CWCA, found that plaintiff should receive the value of the stock options as compensation pursuant to the CWCA.

Having determined that the CWCA applies to the stock options in question, we conclude that the record supports the trial court's award. Therefore, we will not reverse it. *See Peterson v. Ground Water Comm'n, supra.*

### IV.

Defendants further contend that because the trial court erred in awarding damages representing the value of the stock options under the CWCA, the court further erred in imposing a statutory penalty pursuant to that act. We disagree, having already determined that the trial court did not err in that award.

### V.

Defendants contend that the trial court erred in awarding plaintiff attorney fees without conducting the hearing they requested. We agree.

The CWCA provides that:

Whenever it is necessary for an employee to commence a civil action for the recovery or collection of wages and penalties due ... the judgment in such action *shall* include a reasonable attorney fee in favor of

the winning party, to be taxed as part of the costs of the action.

Section 8–4–114, C.R.S.2002 (emphasis added).

When a statute mandates an award of attorney fees to the prevailing party through use of the word "shall," such language "leaves nothing to the discretion of the trial court except to determine what is a reasonable fee." *Keeton v. Rike,* 38 Colo. App. 505, 506, 559 P.2d 262, 263 (1977). What constitutes a reasonable fee, however, may be challenged by the nonprevailing party. In that regard, as here, when the amount constituting a "reasonable" fee is challenged, the trial should conduct a hearing to determine the amount of the award. *Keeton v. Rike, supra.*

Additionally, when a party prevails on appeal under the CWCA, that party is entitled to reasonable attorney fees incurred on appeal. *Cortez v. Brokaw,* 632 P.2d 635 (Colo.App.1981).

Accordingly, the order awarding attorney fees to plaintiff must be vacated, and on remand the trial court shall conduct a hearing to determine plaintiff's reasonable attorney fees as to the CWCA claim at trial and on appeal.

## VI.

Defendants also contend that the trial court erred in awarding plaintiff costs. We disagree.

"[I]f each party prevails in part, an award of costs is committed to the sole discretion of the trial court," and the court's discretion is unaffected by the fact that the judgment awarded to one party is larger than the judgment awarded to the other. *Husband v. Colo. Mountain Cellars, Inc.,* 867 P.2d 57, 62 (Colo.App.1993); *see* § 13–16–108, C.R.S.2002; *see also Grynberg v. Agri Tech, Inc.,* 985 P.2d 59 (Colo.App.1999)(exercising discretion, awarding costs to party who prevailed on only one of five claims), *aff'd,* 10 P.3d 1267 (Colo.2000). Only a statutory prohibition would limit the trial court's discretion to award reasonable costs. *Cherry Creek Sch. Dist. # 5 v. Voelk-*

*er,* 859 P.2d 805 (Colo.1993); *see* § 13–16–109, C.R.S.2002.

Here, plaintiff succeeded upon the breach of contract issue, and no statute limits the court's discretion in awarding reasonable costs to a party prevailing upon at least one issue. *See Harvey v. Farmers Ins. Exch.,* 983 P.2d 34 (Colo.App.1998)(upholding award of costs of photocopying, mileage, parking, deliveries, and telephone charges as part of a nonexclusive list of acceptable costs pursuant to § 13–16–122, C.R.S.2002), *aff'd sub nom. Slack v. Farmers Ins. Exch.,* 5 P.3d 280 (Colo.2000).

Therefore we conclude that the trial court did not abuse its discretion in awarding costs to plaintiff.

## VII.

In her cross-appeal plaintiff contends that the trial court erred in denying her motion for mistrial and her request for a new trial concerning her claim of civil conspiracy against Jacor. However, during oral argument, plaintiff conceded that if we affirm the judgment, further proceedings concerning the civil conspiracy claim would be unnecessary because civil conspiracy damages would be duplicative. Therefore, because we affirm, we do not consider this issue.

The judgment is affirmed. The order awarding attorney fees to plaintiff is vacated, and the case is remanded for further proceedings consistent with the views expressed in this opinion.

Chief Judge HUME and Judge DAVIDSON concur.