Gillian P. HARTMAN, Plaintiff–Appellee,

v.

COMMUNITY RESPONSIBILITY CENTER, INC., Defendant–Appellant.

No. 02CA1308.

Colorado Court of Appeals, Div. IV.

Nov. 6, 2003.

Certiorari Denied March 22, 2004.

⚷374(1)

&#8258;308(11)

Holland & Hart LLP, Christopher H. Toll, Megan C. Bertron, Denver, Colorado, for Plaintiff–Appellee.

Fowler, Schimberg & Flanagan, P.C., Daniel M. Fowler, Katherine Taylor Eubank, Jessica J. Eklund, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge KAPELKE.

Defendant, Community Responsibility Center, Inc. (CRC), appeals the judgment entered upon a jury verdict in favor of plaintiff, Gillian P. Hartman, a former employee, on plaintiff's claim for damages under the Colorado Wage Act and on CRC's counter-

claims for negligence and breach of fiduciary duty. We affirm.

Hartman was employed for several years by CRC, a nonprofit corporation. As the director of finance and administration, she reported to the executive director.

In 1998, the entire board of directors of CRC resigned following an internal liability audit. The new board determined that the executive director was underpaid and therefore decided to increase his compensation substantially and also to grant him back pay. The executive director, in turn, increased the compensation of Hartman and another employee and authorized back pay for them as well. Under CRC's bylaws, the executive director had the authority to set the rate of compensation for all subordinate officers and employees, subject to any limitations imposed by the board.

In 2000, CRC terminated the executive director's employment. Hartman resigned shortly thereafter. In her resignation letter, she requested that CRC deposit into her bank account her final paycheck for her last four days of work and her accrued vacation pay. CRC refused to make the requested payments. After unsuccessfully pursuing a formal wage demand claim through the Colorado Department of Labor and Employment, Hartman filed this action for unpaid wages and accrued vacation pay, penalties, and attorney fees. CRC filed counterclaims, including claims for negligence and breach of fiduciary duty, based on Hartman and her coemployee's having received the increased compensation and back pay.

At the close of CRC's case-in-chief, the court directed a verdict in favor of Hartman on liability as to her Wage Act claim. The jury awarded her damages for her unpaid wages and accrued vacation pay and also found for her on CRC's counterclaims. The judgment entered by the trial court included a statutory penalty in the amount of one-half of the jury's award, pursuant to former § 8–4–104(3), Colo. Sess. Laws 1986, ch. 65 at 505 (now codified with amendments at § 8–4–109(3)).

## I.   Exclusion of Expert Testimony

■   CRC first contends that the trial court abused its discretion by ruling, pursuant to Hartman's motion in limine, that CRC's expert witness would not be allowed to testify concerning the reasonableness of Hartman's conduct. Specifically, CRC argues that its expert witness, an accountant, should have been permitted to testify that Hartman knew or should have known that the compensation increases were imprudent, that she had a duty to report the compensation increases and their detrimental effect to the board, and that she breached that duty. We perceive no basis for reversal.

■   CRE 702 provides that an expert may give opinion testimony where scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Trial courts are granted broad discretion in determining the admissibility of expert testimony under CRE 702, and the exercise of that discretion will not be overturned unless manifestly erroneous. *Masters v. People,* 58 P.3d 979, 988 (Colo.2002).

■■   Generally, expert opinion testimony is not inadmissible merely because it touches on an ultimate issue of fact. However, an expert may not usurp the function of the court by expressing an opinion regarding the applicable law or legal standards. *Quintana v. City of Westminster,* 8 P.3d 527 (Colo.App. 2000).

■   The nature and scope of the duties owed by a fiduciary are issues of law to be determined by the court. *Command Communications, Inc. v. Fritz Cos.,* 36 P.3d 182 (Colo.App.2001).

Here, in partly granting Hartman's motion in limine, the trial court recognized that the scope of the fiduciary duty of the officers of a nonprofit corporation is defined by case law and statute. *See* § 7–128–401, C.R.S.2003 (requiring that an officer act in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner the officer reasonably believes to be in the best interest of the nonprofit corporation); *Van Schaack Holdings, Ltd. v. Van Schaack,* 867 P.2d 892

(Colo.1994) (officer's fiduciary duty determined by looking to legal standards, including prior case law).

In discussing the distinction between claims for breach of fiduciary duty and those for malpractice, the trial court quoted from *Moses v. Diocese of Colorado,* 863 P.2d 310, 321 n. 13 (Colo.1993):

> The fundamental difference between the two causes of action is the former [for fiduciary breach] is a breach of trust and does not require a professional relationship or a professional standard of care, while the latter [for malpractice] is an action for negligence based on a professional relationship and a professional standard of care.

In contrast to an ordinary negligence claim or a breach of fiduciary duty claim, a claim for professional negligence involves standards of care that are generally not within the common knowledge and experience of ordinary persons. Therefore, the standard of care must be established by expert witnesses in professional liability cases.

Here, in excluding the proffered expert witness testimony, the court concluded that it went to the scope of Hartman's duty as an officer, which was a matter of law.

We agree with the trial court that CRC's breach of loyalty claim was not governed by standards of care of a particular profession and that the jury would be able to determine whether a breach occurred based on the court's instructions. Under these circumstances, the court did not abuse its broad discretion in excluding the testimony, even though we recognize that the court may have been incorrect in viewing the proffered testimony as inadmissible as a matter of law, rather than as a matter of the court's discretion.

## II. Admission of Evidence

CRC next contends that the trial court abused its discretion by allowing Hartman to introduce evidence regarding CRC's settlement with the former executive director and regarding the financial condition of the corporation and certain financial decisions made by management. We disagree.

### A.

First, we find no abuse of discretion in the trial court's admitting evidence of the settlement agreement reached by CRC with its former executive director.

Pursuant to CRE 408, evidence of a settlement agreement is not admissible to prove liability for the settled claims, but may be admissible if offered for other purposes, including to prove bias or prejudice of a witness. While CRE 408 enumerates certain exceptions to the general rule excluding evidence of settlements, the list is not exclusive. *See Genova v. Longs Peak Emergency Physicians, P.C.,* 72 P.3d 454, 464 (Colo.App. 2003).

Here, the executive director testified that he was constrained in his testimony by the agreement, which prohibited disclosure of its terms to Hartman. Accordingly, the settlement agreement was admissible to explain the context of the testimony given by the executive director.

In addition, the evidence was relevant to rebut CRC's own evidence that its losses for the year were caused by the allegedly excessive compensation paid to Hartman and her coemployee. For accounting purposes, CRC had treated the sizable settlement payment to the executive director as an expense in the same year Hartman and her coemployee received their payments.

Fed.R.Evid. 408, the counterpart of CRE 408, "does not require exclusion of evidence regarding a settlement if the evidence is offered for some purpose other than proving 'liability for or invalidity of the claim or its amount.'" Jack B. Weinstein & Margaret A. Berger, 2 *Weinstein's Federal Evidence* § 408.08, at 408–27 (2d ed.2003). We conclude that principle should apply with respect to CRE 408, as well. *See State v. Buckley Powder Co.,* 945 P.2d 841 (Colo.1997)(interpretations of federal rules are persuasive authority as to the Colorado rule counterparts).

Here, the settlement evidence was not offered for those prohibited purposes. Accord-

ingly, we conclude that the trial court did not abuse its discretion.

### B.

The trial court also did not abuse its discretion in permitting evidence of CRC's finances and certain corporate financial decisions made during Hartman's employment and following her resignation.

CRC initially asserts that Hartman should not have been permitted to introduce evidence that when her compensation and that of her coworker were increased, CRC had $1.8 million in reserves in the bank, had decided for the first time to compensate board members, had placed an attorney on monthly retainer, and had significantly increased the executive director's compensation and given him a large award of back pay. The trial court ruled that this evidence was relevant to CRC's contention that Hartman should have known that the pay increases would have a negative impact on the company's finances. The evidence also served to corroborate Hartman's testimony that her own pay increase and that of her coworker appeared reasonable in light of the overall financial position of the company. We find no abuse of discretion in the court's ruling.

CRC also maintains that the court abused its discretion in admitting evidence that CRC spent $315,000 on a rental property in Florida approximately seven months after Hartman left employment with the non-profit corporation.

The trial court found this evidence relevant to show whether Hartman's actions had a significant adverse impact on CRC's financial condition. Further, given CRC's own evidence that its decision to purchase the rental property was one of its best investment decisions, the admission of evidence regarding the acquisition did not affect a substantial right of CRC. Again, we perceive no abuse of discretion under the circumstances.

### III. Directed Verdict

Finally, CRC contends that the trial court erred by directing a liability verdict on Hartman's Wage Act claim. We disagree.

The purpose of the Wage Act is to assure the timely payment of wages and to afford adequate judicial relief when wages are not paid. The Act is to be liberally construed to carry out that purpose. *Montemayor v. Jacor Communications, Inc.*, 64 P.3d 916, 923 (Colo.App.2002); *Cusimano v. Metro Auto, Inc.*, 860 P.2d 532, 534 (Colo.App. 1992).

Under the Wage Act, when an employment relationship terminates due to the resignation of an employee, "wages or compensation shall become due and payable upon the next regular payday." Section 8–4–109(1)(b), C.R.S.2003 (formerly codified at § 8–4–104(1)(b)); *Hartman v. Freedman,* 197 Colo. 275, 591 P.2d 1318 (1979).

Employers are not required to pay wages "not yet fully earned under the compensation agreement between the employee and employer." Section 8–4–109(2), C.R.S. 2003 (formerly codified at § 8–4–104(2)). Further, under former § 8–4–104(2), as applicable here, employers were permitted to "set off any lawful charges or indebtedness owing by the employee to the employer." Colo. Sess. Laws 1967, ch. 398, § 80–8–4(2) at 860. "Lawful charges or indebtedness" was narrowly defined by statute to include deductions such as those for taxes and for loans, advances, goods or services, and equipment or property that the employer provided the employee pursuant to a written agreement. Colo. Sess. Laws 1993, ch. 192, § 8–4–101(7.5)(b)–(c) at 868 (repealed Colo. Sess. Laws 2003, ch. 286 at 1851). The Wage Act provides that an employer may not withhold an employee's wages except under those narrow circumstances specified in the act.

Thus, unless the exceptions under the Wage Act apply, an employer who believes an employee has violated a duty must nevertheless pay the compensation on the next payday. The employer may thereafter bring an action against the employee for any losses allegedly caused. However, the employer is not excused from timely payment of the earned wages in the first instance. *Porter v. Castle Rock Ford Lincoln Mercury, Inc.*, 895 P.2d 1146 (Colo.App.1995). Similarly, if the dispute involves the amount of wages owing, the employer must pay the undisputed por-

tion. *Rohr v. Ted Neiters Motor Co.*, 758 P.2d 186 (Colo.App.1988).

Relying on *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486 (Colo.1989), CRC maintains that it was permitted to withhold Hartman's compensation based on the alleged breach of fiduciary duty or, in the alternative, that it had a good faith legal justification for withholding the compensation pending resolution of the claims.

In *Jet Courier*, the court recognized that an employee who breaches the duty of loyalty is not entitled to compensation for the period of disloyalty. Concluding that the trial court had applied unduly narrow legal standards in determining what actions constituted a breach of the employee's loyalty duty, the supreme court remanded for a new trial. As to the issue of entitlement to a statutory penalty under the former § 8–4–104, the supreme court indicated that the trial court should determine on remand whether the existence of the claims for breach of duty of loyalty by the employee constituted a good faith legal justification for the employer's refusal to pay any wages or compensation to the employee upon termination. Notably, Justice Mullarkey indicated in her concurring opinion that under the definition of "lawful charges and indebtedness" in the former § 8–4–101(7.5), which was enacted after the employer's withholding of wages in that case, an employer would not be allowed to withhold an employee's paycheck or set off alleged damages based on a claim of a breach of loyalty. *Jet Courier Serv., Inc. v. Mulei, supra*, 771 P.2d at 505 (Mullarkey, J., concurring).

The definition of "lawful charges and indebtedness" in the version of § 8–4–101(7.5) applicable here is even more restrictive than that discussed by Justice Mullarkey in *Jet Courier*. The definition would not encompass an employer's assertion of a claim of breach of loyalty. Thus, we conclude that the trial court correctly determined that CRC improperly refused to pay Hartman her unpaid wages and accrued vacation pay at the time of her resignation.

CRC also argues that it was not liable for the statutory penalty because the allegations in its counterclaims provided a "good faith legal justification" for refusing to pay Hartman's final wages and accrued vacation pay. We reject the argument.

Under the applicable version of § 8–4–104(3), an employer who refused to pay an employee wages without a good faith legal justification was liable to the employee for a penalty of "the greater of an amount equal to fifty percent [of the wages owed] or an amount equal to the amount of the wages payable per day to such employee not to exceed ten days."

The phrase "without good faith legal justification" means willfully withheld without good cause. *Beasley v. Mincomp Corp.*, 683 P.2d 370 (Colo.App.1984). Willful withholding does not require a showing of malice or other motive, but merely requires a showing that the compensation was withheld without good cause. *Porter v. Castle Rock Ford Lincoln Mercury, Inc., supra.*

In *Porter*, the employer argued that because it mistakenly, but in good faith, believed it had the legal right to retain the plaintiff's wages as a setoff for damages to its truck, those wages were not willfully withheld. The *Porter* division rejected the argument and found record support for the trial court's determination that "although [the employer] may have had a good faith justification 'in its own mind,' there was no 'lawful charge or indebtedness' within the provisions of [the former] § 8–4–101(7.5) providing a good faith legal justification for withholding [the employee's] paycheck." *Porter, supra*, 895 P.2d at 1148.

Here, the trial court determined, as a matter of law, that a claim of breach of fiduciary duty is not a good faith legal justification for not timely paying an employee's final wages under the Wage Act. Given that CRC's asserted reason for withholding payment of Hartman's wages here was not within the listed exceptions under the applicable version of the Wage Act, we agree with the trial court. Therefore, the court did not err in entering a directed verdict and taking the issue from the jury.

The judgment is affirmed.

Judge VOGT concurs.

Judge WEBB concurs in part and dissents in part.

Judge WEBB concurring in part and dissenting in part.

In my view, defendant, Community Responsibility Center, Inc. (CRC), presented sufficient evidence of breach of fiduciary duty from which a reasonable jury could conclude that CRC had a "good faith legal justification" for refusing to pay Hartman's final four days' wages and accrued but unused vacation. Hence, I respectfully dissent from the majority's conclusion in Section III that CRC's liability for the statutory penalty under the former § 8–4–104(3) need not have been submitted to the jury.

A directed verdict is proper only in the clearest of cases, after the court has considered the evidence and all reasonable inferences therefrom in favor of the nonmoving party. See, e.g., Romero v. Denver & Rio Grande W. Ry., 183 Colo. 32, 514 P.2d 626 (1973); Evans v. Webster, 832 P.2d 951 (Colo. App.1991).

An employee who breaches his fiduciary duty is not entitled to compensation for the period of disloyalty. Jet Courier Serv., Inc. v. Mulei, 771 P.2d 486 (Colo.1989).

The majority upholds the directed verdict on Hartman's Wage Act claim by concluding that an employee's breach of fiduciary duty does not constitute "lawful charges and indebtedness" for a setoff under the former § 8–4–101(7.5). I perceive the issue differently.

Under the former § 8–4–104(2), the statutory definition of "lawful charges and indebtedness" limited an employer's power to make a setoff against wages otherwise payable when the employment relationship ends. That section permitted an employer to "set off any lawful charges or indebtedness owing by the employee to the employer." I agree with the majority that damages from an employee's breach of fiduciary duty are not "lawful charges and indebtedness."

Here, however, in addition to asserting a setoff against the Wage Act claim based on damages caused by Hartman's alleged breach of fiduciary duty, CRC contends that, because of Hartman's disloyalty, the wages and vacation pay she seeks did not accrue. See Jet Courier, supra. Hence, under CRC's theory, wages were not payable because they had not been earned under the former § 8–4–104(1)(b).

Unlike the majority, I read the concurrence in Jet Courier, supra, as limited to setoffs, which "are disfavored because of the inherent economic inequity between the employer and employee." 771 P.2d at 505 (Mullarkey, J., concurring). Thus, for me, it does not preclude the distinction between setoff and nonaccrual that I perceive as pivotal here.

The trial court concluded that CRC had presented sufficient evidence for the jury to consider the breach of fiduciary duty counterclaim. Hence, I believe that Hartman's Wage Act claim should likewise have been submitted to the jury, because wages do not accrue during the time when an employee is in breach of fiduciary duty. This error is harmless since the jury, having found against CRC on its counterclaim for breach of fiduciary duty, would necessarily have resolved the Wage Act claim in Hartman's favor.

However, I do not draw the same conclusion concerning failure to submit the penalty to the jury. Under the former § 8–4–104(3), an employer avoided the penalty by showing a "good faith legal justification" for refusing to pay wages due upon termination of the employment relationship. A determination that wages were due does not preclude the existence of a good faith legal justification for having withheld payment based on the same evidence. See Rohr v. Ted Neiters Motor Co., 758 P.2d 186 (Colo.App.1988). Were wage liability and penalty liability coterminous, then the "good faith legal justification" provision would be without purpose. Porter v. Castle Rock Ford Lincoln Mercury, Inc., 895 P.2d 1146 (Colo.App.1995), dealt only with the employer's mere belief that withholding payment was justified, not with the sufficiency of the evidence needed to support that belief.

In contrast, here evidence concerning Hartman's alleged breach of fiduciary duty

could still have sufficed to establish a good faith legal justification, even if that evidence did not support refusing to pay the wages at issue. Hence, I disagree that merely because the jury rejected CRC's breach of fiduciary duty counterclaim, the jury would necessarily have also rejected CRC's assertion of "good faith legal justification" and awarded Hartman the statutory penalty.

Accordingly, I would reverse and remand for a new trial on the question of CRC's liability for the statutory penalty.