25CA1047 Marriage of Boggs 06-18-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1047
Adams County District Court No. 16DR1251
Honorable Rayna Gokli McIntyre, Judge

---

In re the Marriage of

Rebecca Ngoc Boggs,

Appellant,

and

Chadwick Boggs n/k/a Tiffany Timbric,

Appellee.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE GROVE
Gomez and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 18, 2026

---

Rebecca Ngoc Boggs, Pro Se

Law Office of Joel M Pratt, Joel M. Pratt, Colorado Springs, Colorado, for
Appellee

¶ 1       Rebecca Ngoc Boggs appeals the district court's order denying her motion to reinstate debt allegedly owed to her by Tiffany Timbric under the terms of a Memorandum of Understanding (MOU). We affirm.

## I. Background

¶ 2       Boggs and Timbric, who have three children together, were married in 2012, separated shortly thereafter, and filed to dissolve their marriage in 2016. Because she significantly outearned Boggs at the time they dissolved their marriage, Timbric agreed to pay child support and maintenance to Boggs. Timbric, however, has not kept up with those obligations, and as of February 2025, she owed an estimated $174,000 in child support and maintenance arrears.

¶ 3       In February 2025, the parties engaged in court-ordered mediation to resolve parenting and financial issues. The mediation resulted in an MOU — later made an order of the court — under which Boggs agreed to waive $85,000 of the arrears owed by Timbric and, in exchange, Timbric would "pay the current child support obligation, along with $2,800 towards the existing child

support and maintenance arrears monthly, until the arrears are paid in full, for a total of $4,000 per month."[1]

¶ 4    The parties also agreed to a modified payment plan during periods when Timbric was unemployed or "between contracts." For any period in which Timbric "becomes unemployed or is between contracts for a consecutive duration of up to six months," Timbric agreed to "make a minimum monthly payment of $2,500 to [Boggs] by the end of the month" and repay "the shortage between the $2,500 and the $4,000 . . . within four months from the date [Timbric] gets a new contract or new employment." As an apparent incentive for Timbric to keep up with her payments, the agreement also provided for reinstatement of the $85,000 in arrears under certain circumstances:

> The parties agree that if [Timbric] does not make the minimum payments during times of being between contracts, or being out of employment, or make up the difference of the minimum payments made and the $4,000 within the [four] months allotted, the $85,000 forgiven by [Boggs] from the child support and maintenance arrears shall be reinstated. The

---

[1] We are unable to reproduce the parties' arithmetic. Timbric's child support obligation was $1,303 per month; thus, in a month where Timbric paid an additional $2,800 in arrears, it appears that her total payment due would be $4,103.

> parties agree that the reinstatement shall be automatic based on the agreements made herein and the court adopting the same as the orders of the court.

Though the parties agreed that reinstatement would be automatic, the MOU also required Boggs to notify Timbric and Child Support Enforcement and to file a notice with the court in order to reinstate the waived arrears. Timbric would have seven days "from the date of the notice" to file an objection based on proof that she had made the required payments.

¶ 5　Timbric defaulted almost immediately, failing to make the required payment to Boggs by the end of February 2025. The next month, Boggs notified Timbric of her intent to reinstate the $85,000 waived arrears. Though Timbric subsequently made some payments, it appears the payments were short or otherwise untimely. As a result, Boggs filed a motion with the court to enforce the reinstatement of the waived arrears.

¶ 6　Among several other arguments not relevant to this appeal, Timbric responded to Boggs's motion by asserting that the intent of the MOU was not to reinstate the waived arrears anytime her payments were late, but rather to guarantee that Boggs received

payments during periods when Timbric was unemployed. Therefore, Timbric argued, because she was employed when she defaulted on the required payment, Boggs could not reinstate the waived arrears.

¶ 7　A district court magistrate agreed with Timbric's argument and denied Boggs's motion. Boggs then petitioned for review of the order and the district court affirmed. The court reasoned that "[t]here is no ambiguity in the MOU regarding the reinstatement of the arrearages owed by Timbric waived by Boggs — it does not apply when Timbric is employed."

¶ 8　Boggs now appeals, arguing that the district court erroneously interpreted the MOU.

## II.　Standard of Review and Applicable Law

¶ 9　We review the district court's interpretation of a written agreement de novo. *Reishus v. Bullmasters, LLC*, 2016 COA 82, ¶ 20. When interpreting agreements, our primary goal is to give effect to the intent of the parties. *Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo. 2000). When the agreement is complete and free from ambiguity, the agreement's plain language expresses the parties' intent. *Montemayor v. Jacor Commc'ns, Inc.*,

64 P.3d 916, 920 (Colo. App. 2002). Thus, when a contract is unambiguous, we give effect to the contract as written "unless the contract is voidable . . . , or unless the result would be an absurdity." *Ringquist v. Wall Custom Homes, LLC*, 176 P.3d 846, 849 (Colo. App. 2007). The mere fact that the parties have differing opinions regarding the interpretation of the contract does not itself create an ambiguity in the contract. *Id.*

### III. Analysis

¶ 10     Boggs argues that, under the MOU, reinstatement of the waived arrears may be triggered by any default, and not solely by a default occurring during a period when Timbric is unemployed or between contracts for a consecutive duration of up to six months.[2] We disagree.

### A. Plain Language and Structure of the MOU

¶ 11     Only two of the MOU's nine substantive paragraphs mention reinstatement. Paragraph 6 allows for Timbric to make smaller

---

[2] Timbric requests that we summarily dismiss Boggs's appeal because her opening brief does not comply with C.A.R. 28. We agree that Boggs's opening brief is deficient in numerous respects, but we exercise our discretion to address her arguments on the merits. *See Harris v. Reg'l Transp. Dist.*, 155 P.3d 583, 586-87 (Colo. App. 2006); C.A.R. 2.

payments if and when she becomes unemployed or is between contracts for at least six months "wherein there is no income withholding." But it contemplates "automatic" reinstatement of the waived $85,000 arrears under two circumstances: (1) Timbric does not make the minimum $2,500 monthly payments during those periods; or (2) Timbric does not, after "get[ting] a new contract or new employment," "make up the difference of the minimum payments made and the $4,000" within the next four months. And, as relevant here, Paragraph 7 outlines the procedures that Boggs and Timbric must follow in the event that Boggs seeks to reinstate the arrears.

¶ 12    The MOU's remaining paragraphs include recitals as to the amount of arrears, Boggs's agreement to waive a portion of them, and the procedures that Timbric should follow to make monthly payments. In contrast to Paragraphs 6 and 7, none of the other paragraphs set forth either the circumstances that might trigger reinstatement or the procedures that Boggs would need to follow in order to reinstate that portion of the debt.

¶ 13    As Boggs sees it, the location of the "operative clause" — which provides that arrears shall be automatically reinstated "based on

6

the agreements made herein" — does not limit its scope. To the contrary, she argues, even though this language appears only in Paragraph 6, it "unambiguously refers to the MOU as a whole, not merely to unemployment obligations." Thus, Boggs maintains, "whole-instrument interpretation confirms that [Paragraph] 6 was a limited concession for [Timbric's] benefit during unemployment, while [Paragraph] 7 governs reinstatement more broadly."

¶ 14    We are not persuaded. The first two sentences of Paragraph 6 plainly link reinstatement to defaults that occur when Timbric is "between contracts" or "out of employment," without suggesting that a default during any other period would lead to the same result. And that interpretation is reinforced by the last sentence of the paragraph, which, by referring to "*the* reinstatement" (emphasis added), rather than to "reinstatement" in general," ties that sentence to the immediately preceding description of the limited circumstances in which reinstatement may occur.

¶ 15    Like the district court, we reject Boggs's argument that Paragraph 6's reference to "the agreements made herein" broadens the scope of reinstatement to any type of default under the MOU. If the parties intended to allow Boggs to reinstate the waived arrears if

Timbric were to default while employed, they would have included such language in Paragraphs 3, 4, and 5, which detail Timbric's payment obligations during periods in which she has "employment or [a] contract position." *See Am. Indus. Leasing Co. v. Costello*, 418 P.2d 881, 885 (Colo. 1966) (the defendant is bound by the terms of the contract because if the defendant intended something different, they should have contracted for a different provision).

¶ 16    We are also not persuaded that Paragraph 7 expands reinstatement to defaults during periods when Timbric is employed. That paragraph states in relevant part:

> The parties agree that [Boggs] shall provide notice to [Timbric] of her intent to reinstate, be responsible for informing [Child Support Enforcement] and filing notice with the court of the default of payments and the need for reinstatement of the full balance of the original arrears, as estimated in paragraph one above. The parties agree that [Timbric] shall have [seven] days from the date of the notice to file an objection based on having proof to the contrary that [Timbric's] payments had been made pursuant to this MOU.

¶ 17    Paragraph 7 is procedural. It does not dictate the circumstances under which Boggs can reinstate the waived arrears — Paragraph 6 does that — but rather describes how she

8

may do so. Accordingly, Boggs's argument that the "default of payments" necessarily leads to the "the need for reinstatement" is misplaced. While it is true that a default would occur anytime Timbric fails to make a required payment, it does not always follow that reinstatement of the waived arrears is the remedy. To the contrary, it is only when Timbric defaults *and* the conditions in Paragraph 6 are met that Boggs can follow the procedures laid out in Paragraphs 6 and 7 to reinstate the waived arrears.

## B.    Absurd Results

¶ 18    We are likewise unpersuaded that applying the plain language of Paragraph 6 solely to periods of unemployment and gaps between contracts yields absurd results. Boggs argues that the district court's interpretation "makes no sense" because "[n]o rational party would forgive $85,000 in exchange for punctual payments only during unemployment months." But our contrary interpretation is not absurd because nothing in the MOU prevents Boggs from pursuing other means of enforcement — such as a motion for contempt — in the event that Timbric defaults under conditions that do not lead to automatic reinstatement.

9

¶ 19    Nor does the fact that it would have been rational for the parties' agreement to include a simplified enforcement mechanism across the board mean that enforcing the plain language of the MOU yields absurd results. *See Gertner v. Limon Nat'l Bank*, 257 P. 247, 253 (Colo. 1927) ("[C]ourts do not make contracts for parties . . . nor relieve them from mere bad bargains . . . ."); *Am. Indus. Leasing Co.*, 418 P.2d at 884 ("[T]he rule is that courts must pass upon contracts as written, not as if they contained language which might or should have been used."). Accordingly, because we agree with the district court that the plain language of the MOU does not allow for automatic reinstatement of the waived arrears during periods when Timbric is employed, and because applying that plain meaning does not lead to absurd results, we conclude that the court did not err by denying Boggs's motion.

## IV.    Appellate Attorney Fees

¶ 20    Timbric requests an award of attorney fees and costs pursuant to section 13-17-102(4), C.R.S. 2025. Although we agree with Timbric that Boggs's appellate briefing was deficient, we decline to award fees under section 13-17-102(4). "A claim is frivolous if the proponent can present no rational argument based on the evidence

10

or law in support of the claim." *Bd. of Comm'rs v. Eason*, 976 P.2d 271, 273 (Colo. App. 1998).

¶ 21   To be sure, Boggs's appeal was unsuccessful, but she did present rational arguments in support of her claims. *See Janicek v. Obsideo, LLC*, 271 P.3d 1133, 1140 (Colo. App. 2011) ("[A] claim is not frivolous 'if it is meritorious but merely unsuccessful . . . .'" (quoting *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 299 (Colo. App. 2009))); *see also In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases . . . ."), *aff'd*, 2019 CO 81.

¶ 22   Timbric also argues we should award fees and costs because Boggs brought her appeal in bad faith. Claims brought in bad faith "include conduct that is arbitrary, vexatious, abusive, or stubbornly litigious, and may also include conduct aimed at unwarranted delay or disrespectful of truth and accuracy." *Zivian v. Brooke-Hitching*, 28 P.3d 970, 974 (Colo. App. 2001). We do not consider Boggs's contentions on appeal to be so lacking in merit that they indicate bad faith, so we decline to award fees on that ground. *See id.*

## V.   Disposition

¶ 23   The order is affirmed.

JUDGE GOMEZ and JUDGE MOULTRIE concur.