The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 20, 2025

## 2025COA20

**No. 24CA0548, *303 Beauty v. Division of Labor* — Labor and Industry — Wages — Permitted Payroll Deductions — Goods or Services**

A division of the court of appeals considers whether an employer's deductions from an employee's wages under section 8-4-105(1)(b), C.R.S. 2024, for goods that are part of the employer's costs of doing business are lawful.  The division concludes that, while section 8-4-105(1)(b) allows an employer to make deductions for "goods or services" pursuant to a lawful written agreement, it is ambiguous with regard to what types of goods or services are allowable deductions and what types of deductions are unlawful, even if agreed to in writing.  Examining the purpose of the Wage Act and the structure of section 8-4-105(1)(b), the division concludes that an employer may not deduct its own costs of doing business from an employee's wages.

The division further concludes the employer salon in this case shifted its own costs of doing business to its employee by deducting the cost of hair care products from her wages. Accordingly, the division affirms the administrative agency's determination that the parties' product fee deduction agreement was unenforceable.

COLORADO COURT OF APPEALS **2025COA20**

Court of Appeals No. 24CA0548
City and County of Denver District Court No. 23CV31836
Honorable David H. Goldberg, Judge

303 Beauty Bar LLC d/b/a 303 Salon Lohi,

Plaintiff-Appellant,

v.

Division of Labor Standards and Statistics,

Defendant-Appellee.

ORDER AFFIRMED

Division IV
Opinion by JUDGE PAWAR
Harris and Grove, JJ., concur

Announced February 20, 2025

Lantz Law Group, Robert D. Lantz, Evergreen, Colorado, for Plaintiff-Appellant

Philip J. Weiser, Attorney General, Krista Maher, Senior Assistant Attorney General, Tanya M. Santillan, Assistant Attorney General, Sam Wolter, Assistant Attorney General Fellow, Denver, Colorado, for Defendant-Appellee

¶ 1 In this wage dispute, plaintiff, 303 Beauty Bar LLC d/b/a 303 Salon Lohi (the salon), appeals a determination by defendant, the Colorado Department of Labor and Employment's Division of Labor Standards and Statistics (the Division), that the salon violated section 8-4-105(1)(b), C.R.S. 2024, by improperly deducting certain expenses from its employee's pay. We conclude that the wage deductions were for the employer's costs of doing business, and an agreement for such deductions is unenforceable under section 8-4-105(1)(b). Accordingly, we affirm.

## I. Background

¶ 2 The salon employed Elora Buenger as a cosmetologist. It paid her wages and a commission based on her sales of services and retail products. Additionally, the salon and Buenger entered into a written agreement authorizing the salon to deduct from Buenger's pay fees for hair care products, such as hair color and dyes, that she used in the course of providing services to the salon's customers.[1]

---

[1] The amount of deductions varied each year. From 2018-2020, the salon deducted $8.00 from every hair color service Buenger provided. In 2021, it deducted a variable flat fee for particular

¶ 3     Buenger filed a wage complaint with the Division asserting, among other claims, that the salon failed to pay all the wages she earned in 2021 and 2022 due to its improper deduction of product fees.  The Division agreed with Buenger and ordered the salon to pay her $7,500 for unpaid wages and, based on its determination that the salon acted willfully, $22,500 in penalties.

¶ 4     The salon administratively appealed.  Following a hearing, an administrative law judge (ALJ) issued a written order concluding that the product fee deductions were impermissible under section 8-4-105(1)(b).  The ALJ disagreed, however, that the salon acted willfully and reduced the penalties for improper deductions to $10,773.38.  The salon sought judicial review in the district court pursuant to section 24-4-106, C.R.S. 2024, and the district court affirmed.

¶ 5     The salon now appeals, alleging that the Division misapplied the law when it determined that the product fee deductions were improper.

---

services.  In 2022, it deducted four percent of Buenger's wages across the board.

## II.  Standard of Review and Relevant Law

¶ 6  Under section 24-4-106(7), we must sustain an agency's decision unless it is arbitrary or capricious, unsupported by the evidence, or contrary to law.  *Colo. Real Est. Comm'n v. Vizzi*, 2019 COA 33, ¶ 13.

¶ 7  To resolve the question before us, we must interpret statutes located within the Wage Act, sections 8-4-102 to -109, C.R.S. 2024. We review questions involving statutory interpretation de novo. *Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 12.  When interpreting a statute, our primary purpose is to ascertain and give effect to the legislature's intent.  *Id.*  To do this, we first consider the statute's plain language.  *Id.*  If the statute is unambiguous, we enforce it as written and need not resort to other rules of statutory construction. *Id.*  But if the statute is reasonably susceptible of more than one interpretation, we may turn to other interpretive tools to discern the legislature's intent.  *Id.* at ¶ 13.  These interpretive tools include the statute's purpose and structure.  *Id.*

¶ 8  The Wage Act "is a comprehensive statutory scheme designed to ensure the payment of employees' earned wages in a timely manner."  *Id.* at ¶ 14.  Under section 8-4-105(1),

> [a]n employer shall not make a deduction from the wages or compensation of an employee except as follows:
>
> . . . .
>
> (b) Deductions for loans, advances, goods or services, and equipment or property provided by an employer to an employee pursuant to a written agreement between such employer and employee, so long as it is enforceable and not in violation of law.

¶ 9     Additionally, section 8-4-121, C.R.S. 2024, provides that "[a]ny agreement, written or oral, by any employee purporting to waive or to modify such employee's rights in violation of this article shall be void."

### III.    Interpretation and Application of the Wage Act

¶ 10    The Division determined that the parties' product fee deduction agreement was unenforceable under section 8-4-105(1)(b) because it violated the law.  In particular, the Division concluded that the products were primarily for the salon's benefit and section 8-4-105(1)(b) did not authorize the salon to deduct its costs of doing business from Buenger's wages.

¶ 11    As we have already noted, section 8-4-105(1)(b) allows an employer to enter into a written agreement with an employee to deduct certain expenses from the employee's pay, so long as the

4

agreement is "enforceable and not in violation of law." We further recognize, and the salon agrees, that section 8-4-121 prohibits a written agreement in which the employee waives her rights under the Wage Act. *See Nieto*, ¶ 14 (Section 8-4-121 "nullifies any effort to circumvent [the Wage Act's] requirements."). In other words, although a written agreement between an employer and employee for certain deductions is authorized, it may nevertheless be unenforceable if it circumvents an employee's rights that are otherwise protected by the Wage Act. We must therefore determine whether the agreement here — to deduct product fees from Buenger's pay — was an unlawful waiver of her rights under the Wage Act.

### A.  Section 8-4-105(1)(b) is Ambiguous

¶ 12  While section 8-4-105(1)(b) generally prohibits an employer from making deductions from employees' wages, the statute includes a few limited exceptions. One of those exceptions is for "loans, advances, goods or services, and equipment or property provided by an employer to an employee pursuant to a [lawful] written agreement." § 8-4-105(1)(b).

¶ 13     It is not clear from the plain language of the Wage Act,
however, what types of "goods or services" are allowable deductions
under this section or what types of deductions are unlawful, even if
agreed to in writing.  Indeed, the same employer-provided goods or
services may be lawfully deducted under certain circumstances but
not under others.  The Wage Act does not define "goods or services,"
and in contrast to other items listed in section 8-4-105(1)(b) — such
as "loans" and "advances," which directly benefit the employee —
"goods or services" may reasonably be interpreted as benefiting the
employer, the employee, or both.  Thus, because the prohibition
against an unlawful agreement for deductions is reasonably
susceptible of more than one interpretation, we conclude section 8-
4-105(1)(b) is ambiguous.  *See Nieto*, ¶ 13.  We therefore turn to
other tools of construction to determine the legislature's intent.  *Id.*

    B.    Deducting Costs of Doing Business Contravenes the Purpose
of the Wage Act and the Structure of Section 8-4-105(1)(b)

¶ 14     The Wage Act is a remedial statute intended to protect
employees from exploitation, fraud, and oppression.  *See id.* at ¶ 27.
As a remedial statute, we must construe it liberally to carry out its
purpose.  *Id.*

6

¶ 15    The Wage Act provides that employees must be paid their wages.  *See* § 8-4-103, C.R.S. 2024.  Therefore, a contract that reduces those wages by shifting the employer's costs of doing business to the employee would "contravene the legislature's manifest intent to prevent contractual waiver or modification of an employer's mandatory obligations" under the Wage Act.  *Nieto*, ¶ 32.  Indeed, it is precisely the type of exploitation the Wage Act is intended to prevent.

¶ 16    Examining the other exceptions listed within section 8-4-105, we find further support for our interpretation.  As the ALJ observed, the first two items enumerated in section 8-4-105(1)(b) — loans and advances — directly benefit employees, without an obvious benefit to employers.  Giving consistent meaning to the other words listed within the subsection, it follows that the other deductions must also primarily benefit the employee.  *See Coloradans for a Better Future v. Campaign Integrity Watchdog*, 2018 CO 6, ¶ 37 ("It is a familiar principle of statutory construction that words grouped in a list should be given related meaning." (quoting *Third Nat'l Bank in Nashville v. Impac Ltd., Inc.*, 432 U.S. 312, 322 & n.16 (1977))).

## C. The Salon's Product Fee Deductions Were Unlawful

¶ 17 Having determined that an employer may not lawfully deduct its business expenses from an employee's wages, we review the product fees at issue here. The salon does not dispute that the products charged to Buenger were for customers' use, not for Buenger's personal use. It also concedes that the products were necessary for Buenger to complete the basic duties of her job.[2] We therefore agree with the Division that the salon's deductions shifted its own costs of doing business to Buenger.

¶ 18 The salon argues that the product fee deductions were nevertheless proper because the products mutually benefited it and Buenger. It contends that by using the products, Buenger was able to build a client base. Thus, it asserts, the products were not exclusively for the salon's benefit. We disagree.

¶ 19 The salon's business is providing beauty services to its customers. It employs cosmetologists who are required to use the salon's products to provide those services. Adopting the salon's

---

[2] Indeed, Buenger testified that she did not want to be an independent contractor because she did not want to incur the added expense of having to purchase her own products.

reasoning would allow an employer to deduct from an employee's wages any costs that are inherent in the job — for example, the cost of drafting paper for an architect or polish for a dental hygienist — simply because the employee may receive an incidental benefit from the mere fact of being employed.[3]  We cannot conclude that the legislature intended such a result.  *See Env't Def. Fund v. Colo. Dep't of Pub. Health & Env't*, 2022 COA 130, ¶ 13 (we avoid absurd and illogical statutory constructions).

¶ 20     For these reasons, we conclude the Division properly applied the law to conclude that the parties' product fee deduction agreement is unenforceable under sections 8-4-105(1)(b) and 8-4-121.

IV.   Constitutional Retrospectivity

¶ 21     Sometime after the parties entered into the product fee deduction agreement, the Division published Interpretive Notice & Formal Opinion ("INFO") # 16: Deductions From, and Credits Towards, Employee Pay (last updated Dec. 23, 2022),

---

[3] As in these examples, we observe that Buenger's client base was more likely attributable to her skills as a professional, not to the mere availability of products she was required to use in her employment.

https://perma.cc/7CAD-SB26 (INFO #16).[4] INFO #16 explicitly provides that when an employer makes deductions under section 8-4-105(1)(b), "[t]he things provided must be *for the employee's benefit,* not for an employer's cost of doing business."

¶ 22    The salon argues that the Division relied in part on INFO #16 and by doing so violated the Colorado Constitution's prohibition against retrospective legislation. *See* Colo. Const. art. II, § 11 (prohibiting ex post facto laws). It argues there was no way for it to know that the product fee deductions were improper because the Division hadn't published INFO #16 at the time it entered into the product fee deduction agreement with Buenger or made most of the deductions in this case.

¶ 23    We reject the salon's argument because, as the salon concedes, INFO #16 is not law. *See Aurora Pub. Schs. v. A.S.*, 2023 CO 39, ¶ 41 ("[W]hile retroactive application of statutes is generally disfavored under both common law and statute, only retroactive application of a substantive law is constitutionally prohibited.") (emphasis omitted). And in any event, we have concluded that the

---

[4] An INFO is an officially approved notice, opinion, or explanation on a topic of labor law. It is not binding law.

Division's decision applied the Wage Act as it existed at the time the parties entered into their agreement, irrespective of the nonbinding agency guidance the Division later published.

## V.    Disposition

¶ 24    The order is affirmed.

JUDGE HARRIS and JUDGE GROVE concur.