25CA0438 Leo v Morgan 03-05-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0438
Jefferson County District Court No. 23CV31698
Honorable Chantel Contiguglia, Judge

---

Kristen Leo,

Plaintiff-Appellant,

v.

Heather Morgan,

Defendant-Appellee.

---

JUDGMENT AFFIRMED, ORDER AFFIRMED IN PART
AND REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE MOULTRIE
Tow and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 5, 2026

---

The Wilhite & Miller Law Firm, David H. Miller, Denver, Colorado, for
Plaintiff-Appellant

No Appearance for Defendant-Appellee

¶ 1     In this action brought under the Colorado Wage Claim Act (CWCA), sections 8-4-101 to -127, C.R.S. 2025, plaintiff, Kristen Leo, appeals the trial court's order denying her request for attorney fees and costs and the judgment underlying that order.  We affirm the judgment, affirm in part and reverse in part the court's fees and costs order, and remand the case for further proceedings.

## I.     Background

¶ 2     This case arises from Leo's resignation from her employment as a personal care provider in the host home that defendant, Heather Morgan, operated.  Alleging that Morgan owed her unpaid wages and compensation, Leo asserted claims against Morgan for violations of the CWCA, as well as common law claims for breach of contract, promissory estoppel, unjust enrichment, and quantum meruit.

¶ 3     Morgan denied the allegations, and the case proceeded to a two-day court trial in September 2024.

¶ 4     On November 1, 2024, the court issued findings of fact and conclusions of law (the judgment).  The court concluded that Leo was Morgan's employee and was, therefore, entitled to the

protections of the CWCA.[1]  However, the court determined that Leo

failed to prove her pay rate and her average hours worked or that

she was entitled to overtime premiums and rest break wages.  The

court thus concluded that Leo was only entitled to unpaid wages at

the statutory minimum wage rate, in the amount of $4,047.  The

court also determined that, because Leo failed to make a valid

written demand for her alleged unpaid wages, she wasn't entitled to

penalties under section 8-4-109(3), C.R.S. 2025.  The court

dismissed Leo's common law claims, finding that Leo failed to

introduce competent evidence to support them.[2]  Therefore, the

court entered judgment against Morgan in the amount of $4,047

and granted Leo leave to file a motion for pre- and post-judgment

interest and any reasonable costs.

---

[1] The Colorado Wage Claim Act protects only persons who are determined to be "employees."  *See Redmond v. Chains, Inc.*, 996 P.2d 759, 764-65 (Colo. App. 2000); § 8-4-101(5), C.R.S. 2025 ("'Employee' means any person . . . performing labor or services for the benefit of an employer," but it doesn't include "an individual primarily free from control and direction in the performance of the service, both under his or her contract for the performance of service and in fact, and who is customarily engaged in an independent trade, occupation, profession, or business related to the service performed.").

[2] Leo doesn't challenge the court's dismissal of her common law claims.

¶ 5     On November 18, 2024, Leo filed a motion for attorney fees, costs, and interest (fees motion), along with a bill of costs. Leo's fees motion asserted that as the prevailing party, she was presumptively entitled to $30,262.25 in attorney fees and $2,069.12 in costs under section 8-4-110(1)(b), C.R.S. 2025. Leo also requested that statutory pre- and post-judgment interest be applied to the judgment.

¶ 6     On the same date, Leo filed a C.R.C.P. 59 motion seeking amendment of the judgment (Rule 59 motion). Leo asked the court to amend (1) its conclusion that the form of Leo's written demand for payment of unpaid wages was insufficient to entitle her to penalties under the CWCA; (2) its implied finding that Morgan didn't willfully violate the CWCA; and (3) the judgment to address the court's "omission" of an award of statutory attorney fees. As to attorney fees, Leo again asserted that she was the prevailing party and was therefore entitled to an award of reasonable attorney fees and costs under the CWCA, in the amounts detailed in her fees motion.

¶ 7     On January 21, 2025, the trial court issued an order denying Leo's Rule 59 motion as untimely (Rule 59 order). Nevertheless, the

3

court thoroughly addressed the substance of the arguments Leo raised in the Rule 59 motion. In doing so, the court made additional findings and ultimately concluded that, because Leo's demand for payment was made in bad faith for an undeterminable amount of money at the time it was made, she wasn't entitled to penalties under section 8-4-109(3).

¶ 8 The court contemporaneously issued an order addressing Leo's request for attorney fees, costs, and interest (fees order). In its fees order, the court noted that the substantive arguments supporting Leo's request for fees and costs were contained in her Rule 59 motion. The court thus incorporated into the fees order its findings and conclusions from the Rule 59 order. The court denied Leo's request for attorney fees and costs but granted her request for interest and reduced the amount of prejudgment interest to which Leo was entitled to a sum certain.

¶ 9 Leo now appeals.

## II. Appellate Jurisdiction

¶ 10 Before reaching the merits of Leo's contentions, we must first determine whether we have jurisdiction over this appeal. *See Harding Glass Co. v. Jones*, 640 P.2d 1123, 1126 (Colo. 1982).

4

¶ 11 Our jurisdiction is limited to reviewing final judgments or orders. *USIC Locating Servs. LLC v. Project Res. Grp. Inc.*, 2023 COA 33, ¶ 34. Generally, "[a] judgment is final when it disposes of the entire litigation on the merits." *Hierath-Prout v. Bradley*, 982 P.2d 329, 330 (Colo. App. 1999).

¶ 12 "The timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review." *Estep v. People*, 753 P.2d 1241, 1246 (Colo. 1988). C.A.R. 4(a) requires that appellants file their notice of appeal within forty-nine days after the court enters a final judgment. C.A.R. 4(a)(1). If a party files a timely motion under Rule 59(a) in the trial court, meaning within fourteen days of the entry of the judgment, C.R.C.P. 59(a), the time to file the notice of appeal is tolled until the court either timely rules on the motion or the motion is deemed denied under Rule 59(j). C.A.R. 4(a)(3); *Goodwin v. Homeland Cent. Ins. Co.*, 172 P.3d 938, 944 (Colo. App. 2007).

¶ 13 Leo filed her Rule 59 motion on November 18, 2025, more than fourteen days after the entry of the judgment, and she filed her notice of appeal on March 10, 2025. We issued a show cause order directing Leo to address whether this court had jurisdiction

over her appeal of the judgment. *Leo v. Morgan*, (Colo. App. No. 25CA0438, Nov. 20, 2025) (unpublished order).

¶ 14    Leo's response to the show cause order asserts that her Rule 59 motion was timely filed on November 15, 2024, but rejected due to a "clerical error," and then refiled on November 18, 2024. We conclude that it doesn't matter when Leo filed the Rule 59 motion because the appeal is timely regardless.

¶ 15    A final order is one that addresses both liability and damages. *Stone Grp. Holdings LLC v. Ellison*, 2024 COA 10, ¶ 18. Because prejudgment interest is a component of a damages award, an order isn't final until prejudgment interest is reduced to a sum certain. *Id.* The judgment, therefore, didn't become final until the court issued the fees order. Leo's notice of appeal was filed within forty-nine days of the court's issuance of the fees order. *See* C.A.R. 4(a). Accordingly, we have jurisdiction to consider the merits of her appeal. *See Chavez v. Chavez*, 2020 COA 70, ¶¶ 20-21 (timely notice of appeal and finality of judgment are prerequisites to appellate jurisdiction).

### III. Penalties Under Section 8-4-109(3)(b)

¶ 16 Leo contends that the trial court disregarded the CWCA's plain language by finding she didn't make a proper written demand for unpaid wages and interpreting section 8-4-109(3)(b) to place an affirmative obligation on Leo, as the employee — rather than Morgan, as the employer — to establish the amount of unpaid wages owed to Leo. She argues that the court's erroneous statutory interpretation deprived her of the automatic penalties in section 8-4-109(3)(b), including the increase in the penalty amount if the court determined Morgan's conduct to be willful.

¶ 17 We discern no reversible error.

### A. Additional Facts

¶ 18 The court acknowledged in the judgment that section 8-4-109(3)(b) mandates penalties if an employer refuses to pay an employee their owed wages within fourteen days after the employee sends a written demand for such wages to the employer. But the court found that certain emails Leo sent to Morgan were insufficient to constitute a written demand that would subject Morgan to automatic penalties.

¶ 19    In her Rule 59 motion, Leo argued that, even if the emails weren't a proper written demand under the CWCA, her complaint was. In the Rule 59 order, the court noted that Leo was only entitled to penalties under section 8-4-109(3)(b) if her written demand met certain requirements and Morgan still failed to pay the unpaid wages. The court denied Leo's request for penalties because it concluded that (1) Leo's complaint also wasn't a sufficient written demand and (2) Leo's wages weren't "determinable" when she made her demand.

¶ 20    In support of its conclusion that Leo's wages weren't "determinable," the court found that "[Leo's] inaccurate and bad faith demands provided no way for [Morgan] to determine the wages [that] [Leo] was owed." The court also found that Leo had failed to establish a determinable amount of wages by presenting evidence such as "pay stubs, time tickets, or any other documents from which the amount due could be determined with relative accuracy."

¶ 21    Because the court found that Morgan wasn't liable for statutory penalties, it declined to consider whether Morgan's conduct was willful.

## B.    Standard of Review

¶ 22    We review questions of statutory interpretation de novo. *Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 12.  Our aim is to effectuate the legislature's intent by giving consistent, harmonious, and sensible effect to the entirety of a statutory scheme.  *Id.*  We discern the legislature's statutory intent by first "looking to the text of the statute and giving words and phrases their plain and ordinary meaning."  *Munoz v. Am. Fam. Mut. Ins. Co.*, 2018 CO 68, ¶ 9.  "[W]here the plain language is unambiguous, we apply the statute as written."  *Nieto*, ¶ 12.

## C.    Applicable Law

¶ 23    Under the CWCA, an employee may file a civil action to recover unpaid wages from a prior employer.  *See* §§ 8-4-109(1)(a)-(b), -110(2).  "The purpose of the CWCA is to assure the timely payment of wages and provide adequate judicial relief when wages are not paid, and it should be liberally construed to carry out its purpose."  *Montemayor v. Jacor Commc'ns, Inc.*, 64 P.3d 916, 923 (Colo. App. 2002).

¶ 24    The CWCA "does not itself create any substantive right to compensation for labor and services performed."  *Barnes v. Van*

9

*Schaack Mortg.*, 787 P.2d 207, 210 (Colo. App. 1990). An employee's substantive right to payment is determined by the terms of their employment agreement. *Id.* The CWCA simply "establishes minimal requirements concerning when and how agreed compensation must be paid and provides remedies and penalties for an employer's noncompliance with those requirements." *Id.*

¶ 25 When an employee resigns, their wages become "due and payable upon the next regular payday." § 8-4-109(1)(b). However, "[n]o amount is considered to be wages or compensation until such amount is earned, vested, and determinable." § 8-4-101(14)(a)(I).

¶ 26 The CWCA authorizes statutory penalties, in addition to the recovery of wages, if an employer refuses to pay an employee who is owed wages. *Lester v. Career Bldg. Acad.*, 2014 COA 88, ¶ 15 (citing *Carruthers v. Carrier Access Corp.*, 251 P.3d 1199, 1202 (Colo. App. 2010)). To receive statutory penalties, an employee must first make a written demand for their unpaid wages. § 8-4-109(3)(a). A "written demand" is "any written demand for wages . . . from or on behalf of an employee, including a notice of complaint." § 8-4-101(15).

¶ 27    As relevant here, an employer who fails to pay all "determinable wages or compensation" within fourteen days of a written demand is subject to an automatic penalty of "two times the amount of the unpaid wages." § 8-4-109(3)(b)(I).  The penalty amount increases to three times the amount of the unpaid wages if the employee can show that the employer's refusal to pay was willful.  § 8-4-109(3)(b)(II).

## D.    Analysis

¶ 28    Leo contends the court erred by (1) concluding that her complaint didn't meet the definition of a written demand; (2) determining she wasn't entitled to statutory penalties under section 8-4-109(3)(b) because her wages were undeterminable; and (3) failing to evaluate Morgan's conduct for willfulness.

¶ 29    We agree that Leo's complaint meets the definition of a "written demand" under the CWCA.  *See* § 8-4-101(15).  But we disagree that Leo's wages were determinable, such that she is entitled to automatic penalties.

¶ 30    We haven't found, and Leo doesn't identify, a case that considers the meaning of "determinable" wages under section 8-4-109(3)(b).  However, considering the CWCA as a whole, we see

11

no reason to depart from the meaning of "determinable" wages as the supreme court defined that term in *Nieto*. *See Nieto*, ¶ 18 (defining "determinable" wages as those that can be "'ascertained' pursuant to the terms of an agreement" or are "capable of being determined, definitely ascertained, or decided upon" (first quoting Black's Law Dictionary 564 (11th ed. 2019); and then quoting Merriam-Webster Dictionary, https://perma.cc/4YBM-K8VN)).

¶ 31    Leo argues that her wages were "determinable" because Morgan had the information necessary to calculate Leo's unpaid wages upon receipt of Leo's complaint.[3]  In support of this argument, Leo asserts that the CWCA and *Nieto* are "clear" that the "burden of keeping accurate records[] and determining [the] amount

---

[3] Leo also argues that section 8-4-109(3)(a.5), C.R.S. 2025, provides the "prerequisite procedural requirements" to an award of penalties under section 8-4-109(3)(b).  Section 8-4-109(3)(a.5) discusses limitations on liability for an employer who "makes a legal tender of the full amount of all wages that the employee . . . in good faith demands."  Contrary to Leo's interpretation, the trial court interpreted subsections (3)(a.5) and (3)(b) as alternative bases for awarding penalties for unpaid wages.  We need not resolve which interpretation is correct because, even assuming subsection (3)(a.5) is a separate basis for — rather than a procedural prerequisite to — an award of statutory penalties, it's undisputed that Morgan didn't pay Leo any sum between Leo's resignation and the entry of the November judgment.  Thus, the limitations on liability contained in subsection (3)(a.5) wouldn't apply under the circumstances here.

of wages an employee may be owed at the time their employment ends rests squarely on the employer." Leo thus appears to argue that because employers are obligated by the CWCA to keep records of employees' wage-related information, it follows that an employer has the burden to establish the amount of an employee's "determinable" but unpaid wages when an employee makes a wage demand under section 8-4-109(3)(b). And she contends that the court improperly "shift[ed] the burden" from Morgan to her to prove the amount of her unpaid wages.

¶ 32    We acknowledge that the CWCA requires employers to maintain records related to an employee's wages. *See* § 8-4-103(4.5), C.R.S. 2025 (requiring employers to retain records, including those reflecting gross wages earned and dates of pay periods, for at least three years or be subject to fines). And in *Nieto* the supreme court, referencing section 8-4-109, noted that employers must "pay, upon [an employee's] separation from employment, all earned but unpaid compensation." *Nieto*, ¶ 14. But *Nieto* didn't address the specific contention that Leo asserts here: Because the CWCA requires employers to keep wage-related records, an employer is responsible for identifying an employee's

13

determinable wages when the employee makes a written demand under section 8-4-109(3) — even if the amount demanded is later found to be wildly inaccurate.

¶ 33    Leo's reliance on *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), *superseded by statute*, Portal–to–Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84, is likewise unavailing.  In *Clemens*, several employees filed a lawsuit against their employer under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b) (1946), alleging they were owed unpaid overtime wages.  328 U.S. at 684.  The Supreme Court held that while an employer has a duty under the FLSA to "keep proper records of wages, hours and other conditions and practices of employment," an employee has "the burden of proving that [they] performed work for which [they] [were] not properly compensated."  *Id.* at 687.  And in instances where an employer hasn't kept proper records, an employee satisfies their burden if they prove that they have "in fact performed work for which [they] [were] improperly compensated and if [they] produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Id.*

¶ 34　　We also find unpersuasive Leo's reliance on certain Interpretive Notice & Formal Opinions (INFOs)[4] promulgated by the Colorado Department of Labor and Employment (CDLE). Referencing two INFOs — Interpretive Notice & Formal Opinion ("INFO") #2B: Orders of Wages, Penalties, Fines, and Consequences for Non-Compliance (last updated Aug. 1, 2023), and Interpretive Notice & Formal Opinion ("INFO") #3A: Timing of Wage Payments, & Required Record-Keeping (last updated July 11, 2023) — which each in turn reference section 8-4-109(3)(b), Leo argues that penalties are mandatory if an employer fails to remit payment of unpaid wages within fourteen days of a written demand. But neither of these INFOs clearly states who — employer or employee — initially bears the burden of establishing an employee's determinable wages when an employee makes a wage demand.

¶ 35　　And, although not binding on us, INFO #2A says that an employee demanding unpaid wages has the responsibility to "provide an explanation that is clear, specific, and shows they are

---

[4] "An INFO is an officially approved notice, opinion, or explanation on a topic of labor law. It is not binding law." *303 Beauty Bar LLC v. Div. of Lab. Standards & Stats.*, 2025 COA 20, ¶ 21 n.4.

entitled to wages," supported by documentation showing "(a) that a violation of Colorado wage and hour law may have occurred, and (b) a reasonable estimate of wages due." Interpretive Notice & Formal Opinion ("INFO") # 2A: The Wage Claim Investigation Process (last updated Aug. 6, 2025), https://perma.cc/L8YL-79BE; *see also* Dep't of Lab. & Emp. Rule 4.2.1, 7 Code Colo. Regs. 1103-7 (An employing bringing a wage complaint must "provide an explanation of the basis for the complaint that is clear, specific, and shows the employee is entitled to relief . . . [and] provide sufficient evidence from which both a violation of Colorado wage and hour laws and an estimate of wages due may be reasonably inferred.").

¶ 36    Nevertheless, even assuming that Morgan was responsible for identifying Leo's determinable wages upon receiving Leo's complaint, it's undisputed that Morgan didn't have consistent records related to Leo's employment. Thus, the only information from which Morgan could have calculated Leo's wages was the information in Leo's complaint. And Leo asserts that Morgan could have and should have done just that. But, as we discuss next, Leo's unpaid wages weren't ascertainable from the information she provided in her complaint.

¶ 37    Morgan and Leo didn't have a written employment agreement. But Leo alleged the following in her complaint:

- Morgan hired her to work from January 2023 to June 2023 to provide "round-the-clock" care for the host home's clients.

- Morgan verbally agreed to pay her $17.50 per hour.

- Leo worked "at least" thirteen hours per day.

- Leo left her employment with Morgan in mid-June 2023.

- Leo "estimate[d]" that she had worked 2,041 total hours during her employment — entitling her to $29,817.50 in outstanding wages.

But Leo also alleged contradictory facts, as follows:

- From January 2023 to March 2023 she split the full-time duties of the job with another employee.

- Morgan required her to provide care to clients at "all hours of the day, seven days a week, except for a 1-hour period twice a day . . . Monday through Friday."

- Leo worked "up to" thirteen hours every day during her employment.

In sum, Leo alleged that between January 2023 and mid-June 2023, she worked anywhere from zero hours per day — based on

17

her statements that she worked "up to" thirteen hours per day and, for three months, split her full-time duties with another employee in an unspecified manner — to twenty-four hours per day. Under these circumstances, we can't conclude that the information in Leo's complaint enabled Morgan to definitively ascertain Leo's unpaid wages. *See Nieto*, ¶ 18.

¶ 38 Still, Leo argues that "[a]s proof of Morgan's ability to make [a] determinable wage calculation, the trial court was able to complete this simple task *with just the information presented at trial.*" (Emphasis added.) But this argument contradicts Leo's assertion that Morgan had all the "necessary information" to calculate Leo's determinable wages upon receiving her complaint and misconstrues the court's actions.

¶ 39 While true that the court ultimately calculated Leo's unpaid wages, the information supporting the court's calculations didn't come from Leo's complaint. Indeed, the court found that the assertions Leo made in her complaint about the number of hours she worked and her rate of pay were untrue. The court specifically rejected Leo's attempt to prove the hours she worked through treatment-related administrative records from Morgan's host home.

Instead, the court evaluated witness testimony, considered numerous exhibits, and relied on the then-applicable minimum wage rate to calculate the wages that Morgan owed Leo. Said differently, while the court ultimately determined Leo's wages, we disagree that her wages were "determinable" as that term is defined in *Nieto* at the time she filed her complaint. *See id.*

¶ 40 And because Leo's wages weren't "determinable," Morgan isn't liable for automatic penalties under section 8-4-109(3)(b) for failing to pay Leo within fourteen days after receiving Leo's complaint. Finally, because we have concluded that Morgan wasn't liable for automatic penalties, the trial court didn't err by not evaluating Morgan's conduct for willfulness.

## IV. Attorney Fees and Costs Under the CWCA

¶ 41 Leo contends that the trial court also erred by denying her request for attorney fees and costs. We disagree with respect to the court's denial of Leo's attorney fees, but we agree with respect to its denial of her costs.

### A. Standard of Review

¶ 42 Leo contends that we should review her entitlement to attorney fees and costs de novo. We review de novo whether the

19

trial court applied the correct legal standard in reaching its decision on attorney fees and costs. *See Lester*, ¶ 13. However, Leo doesn't challenge the legal standards the court relied on in its analysis; instead, Leo challenges the court's application of those standards to this case. Accordingly, we review the court's fees order for an abuse of discretion. *See id.*

¶ 43 A court abuses its discretion when its decision is based on a misapplication of the law or is manifestly arbitrary, unreasonable, or unfair. *Carruthers*, 251 P.3d at 1210.

### B. Applicable Law

¶ 44 An employee who prevails on a CWCA claim by "recover[ing] a sum greater than the amount tendered by the employer" is presumptively entitled to an award of attorney fees and costs. § 8-4-110(1)(b); *Lester*, ¶ 29 (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)); *see also Carruthers*, 251 P.3d at 1208 (indicating that *Newman* should serve as an interpretive tool to guide the determination of attorney fee awards to prevailing employees under the CWCA).

¶ 45 However, a prevailing employee's presumptive entitlement to attorney fees is rebuttable when "special circumstances would

render" such an award "unjust." *Lester*, ¶ 31 (quoting *Newman*, 390 U.S. at 402). On rare occasions, special circumstances may arise when a plaintiff brings a suit in bad faith. *Id.* at ¶¶ 31-32.

### C.    Analysis

¶ 46    Leo contends that the trial court erred by denying her attorney fees and costs because (1) Leo's presumptive entitlement to attorney fees could only be rebutted by Morgan and not by the court; (2) it wrongly determined that Leo's CWCA demand was made in bad faith; and (3) it failed to expressly address her request for costs.

### 1.    Rebutting the Presumed Attorney Fee Award

¶ 47    Leo contends that "only the losing party, not the court itself, may rebut the presumption of awarding attorney fees." She further notes that Morgan never attempted to rebut the presumption. In support of her argument, Leo relies on language in *Lester* that says "the losing party" may rebut the attorney fee presumption by showing that the fee award would be unjust because of special circumstances. *Lester*, ¶ 31. Leo asserts this language means that the presumption can *only* be rebutted by evidence or argument from the losing party. We decline to read *Lester* this narrowly for two reasons.

¶ 48    First, *Lester* says that special circumstances "may arise when a plaintiff brings a suit for purposes of delay, or in bad faith; or seeks to harass, embarrass, or abuse another party or the court." *Id.* Thus, *Lester* clearly contemplates a court's consideration of a prevailing employee's litigation-related actions to determine whether special circumstances rebut the presumption in favor of attorney fees.

¶ 49    Second, to the extent that the division in *Lester* intended to restrict a court's consideration of whether special circumstances exist to evidence solely presented by the losing party, we aren't bound by that division's decision. *Chavez*, ¶ 13 ("[D]ivisions [of the court of appeals] are not bound by the decisions of other divisions . . . .").

¶ 50    We acknowledge that Morgan didn't respond to Leo's fees motion. But, as we discuss next, the court's determination that Leo acted in bad faith, thereby rebutting her presumptive entitlement to attorney fees, was based on the court's evaluation of the evidence presented to it during trial.

## 2. Bad Faith

¶ 51 In denying Leo's request for fees and costs, the court said, "[B]ad faith is an example of one of the special circumstances that rebuts the presumption of attorneys' fees." The court found that Leo's demands were made in bad faith because they were based on inaccurate and false statements that rendered the amount of her claimed wages undeterminable; Leo's own evidence demonstrated that the numbers of hours she claimed to have worked was "not plausible"; and there was a significant discrepancy in the amount she demanded versus what the evidence at trial demonstrated she was actually owed. We discern no reversible error.

¶ 52 "Bad faith" includes conduct that is "stubbornly litigious" or "disrespectful of truth and accuracy." *W. United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo. 1984).

¶ 53 Noting that Morgan might have paid the full amount of Leo's unpaid wages had Leo made a good faith demand, the court concluded that "extensive litigation [was] the direct result of [Leo's] bad faith demands," resulting in unnecessary legal fees. The record demonstrates that Leo made unsupported demands for unpaid wages in the amount of $57,000 and $29,817.50; however, the

23

evidence demonstrated she was only owed $4,047. The evidence presented to the court, including Leo's own testimony and that of her mother, contradicted the factual allegations Leo made in her complaint about her hours worked and pay rate.

¶ 54 The record thus demonstrates that Leo's own evidence at best minimally supported, and at worst directly refuted, the allegations in her complaint. And based on her failure to produce sufficient evidence to support her claims, Leo ultimately only recovered a fraction of the amount that she asserted in her complaint she was owed. Therefore, we can't conclude that the court abused its discretion by determining that this case fell into the rare category of cases in which the presumptive entitlement to attorney fees was rebutted by special circumstances.

### 3. Costs

¶ 55 Finally, Leo asserts that the trial court failed to affirmatively address her request for costs. We agree.

¶ 56 A court's award of costs must be supported by findings that enable a reviewing court to determine the basis for the award. *Miller v. Hancock*, 2017 COA 141, ¶ 46. Both the fees order and the findings from the Rule 59 order referenced therein are silent as to

Leo's request for costs. Accordingly, we reverse the fees order solely with respect to its denial of Leo's costs and remand this case for the trial court to address Leo's request for costs. *See In re Marriage of Goodbinder,* 119 P.3d 584, 587 (Colo. App. 2005) (remanding case where the trial denied party's bill of costs without explicit findings and conclusions of law).

## V. Appellate Attorney Fees and Costs

¶ 57 Leo requests an award of appellate attorney fees and costs. Because Leo hasn't prevailed on her appellate argument regarding her entitlement to penalties and attorney fees under the CWCA, we deny her request for appellate attorney fees. *Cf. Lester,* ¶ 48 (awarding appellate attorney fees where party prevailed on their CWCA argument on appeal). But because we are partially reversing, we remand this case to the trial court to determine whether Leo should be awarded costs related to this appeal. *See* C.A.R. 39(a)(4).

## VI. Disposition

¶ 58 The judgment is affirmed. The portion of the fees order denying Leo's request for attorney fees under section 8-4-110 is affirmed. The portion of the fees order denying Leo's request for

25

costs is reversed, and the case is remanded to the trial court for consideration of Leo's request for reasonable costs and for determination of whether Leo should be awarded costs in connection with this appeal under C.A.R. 39(a)(4).

JUDGE TOW and JUDGE LUM concur.