25CA0951 Global Air v Chatterton 06-04-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0951
Arapahoe County District Court No. 24CV30184
Honorable Don J. Toussaint, Judge

Global Air Mobility Inc., a Delaware corporation,

Plaintiff-Appellant,

v.

Bruce Chatterton,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MEIRINK
Pawar and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 4, 2026

Carriere, Little & Leach, LLP, Christopher T. Leach, Englewood, Colorado, for
Plaintiff-Appellant

Ragab Law Firm, P.C., Sami M. Ragab, Brian T. Downing, Denver, Colorado, for
Defendant-Appellee

¶ 1    Plaintiff, Global Air Mobility Inc. (GAMI), appeals the dismissal of its complaint and the trial court's entry of judgment in favor of defendant, Bruce Chatterton.  We affirm.

## I.    Background

¶ 2    GAMI was created as a holding company for two aviation companies that Eugene Haggan founded.  Haggan is the chair of GAMI's board of directors.  He hired Chatterton to serve as GAMI's CEO so that Chatterton could prepare GAMI for an initial public offering.  Chatterton drafted an employment agreement, whereby the parties agreed that Chatterton would receive a base salary of $560,000 per year.  Chatterton and GAMI signed the employment agreement on January 1, 2021.  Per the agreement, Chatterton and GAMI could "from time to time agree to defer" Chatterton's salary and benefits "in full or in part per mutual agreement," but any "deferral in no way relieve[d] the company of its obligations under the agreement."

¶ 3    As CEO, Chatterton had control of GAMI's bank accounts and the company's funds.  In April 2023, Haggan noticed that $100,000 was missing from GAMI's accounts and that there had been several withdrawals made outside of payroll dates that weren't tied to any

1

invoices and were being paid to individuals unassociated with GAMI.

¶ 4 In May 2023, Haggan said that he noticed other "gross negligence of use of" GAMI's funds. Based on "those two combined" incidents, Haggan decided that he needed "to let Chatterton go." On June 15, 2023, Haggan informed Chatterton that the company was not in a position to go public and that Chatterton's employment was terminated. Haggan presented Chatterton with a separation agreement, which Haggan's attorney had drafted. Chatterton testified that Haggan went over the first paragraph of the separation agreement, which explained that Chatterton was being terminated for misallocating GAMI's funds and misappropriating approximately $107,030 but that GAMI was willing to waive any potential claims against him; Haggan told Chatterton that he needed to sign the separation agreement. Chatterton was escorted out of the office without a discussion about the termination.

¶ 5 The separation agreement included the following provision:

> In exchange for the waiver of all claims . . . to which you would not otherwise be entitled, you hereby generally and completely release the Company . . . from any and all claims, liabilities and obligations, both known and

> unknown, that arise out of or are in any way related to events, acts, conduct, or omissions occurring prior to the time of your execution of this Agreement.

The release included, in relevant part, "all claims related to your compensation or benefits from the Company, including salary [and] wages" and claims arising under the Colorado Wage Claim Act (CWCA). Nothing in the separation agreement prevented Chatterton from "filing, cooperating with, or participating in any proceeding before a government agency," like the Colorado Department of Labor and Employment, but the release "waive[d Chatterton's] right to any monetary benefits or other personal relief in connection with an such claim, charge or proceeding." Per the separation agreement, Chatterton "hereby represent[ed] that [he had] been paid all compensation owed and for all hours worked."

¶ 6    Haggan told Chatterton he had until July 7 to accept the separation agreement. On July 3, Haggan and Chatterton met in a parking lot. Chatterton returned the signed separation agreement,

3

and Haggan gave Chatterton a check for $5,000 from his personal bank account.[1]

¶ 7 Haggan and Chatterton testified that Chatterton wasn't paid the "full amount of wages [Chatterton] was owed and due" under the employment agreement. Haggan testified that, although it wasn't written into the employment agreement, he and Chatterton verbally agreed that Chatterton "wouldn't get paid his base salary unless [GAMI] went . . . public." Chatterton disagreed, asserting that there were no agreements outside of the employment agreement. Chatterton testified that it was his understanding that his salary at the time of his employment was $560,000 a year but that he agreed to defer his full salary.

¶ 8 Chatterton filed a demand for arbitration in October 2023 for claims of wrongful termination, unpaid wages, breach of contract, fraud, and civil theft stemming from GAMI's failure to comply with the employment agreement.

¶ 9 GAMI then filed a complaint in district court for breach of contract — based on Chatterton's failure to comply with the

---

[1] Chatterton testified that the $5,000 was intended to help his family.

separation agreement — and to stay arbitration. GAMI also sought (1) a declaratory judgment that the separation agreement was a valid and enforceable contract that barred Chatterton's arbitration claims and (2) a preliminary and permanent injunction against Chatterton's arbitration claims. GAMI argued that by signing the separation agreement, Chatterton agreed to release GAMI from all claims "arising under the laws of the state of Colorado," including but not limited to the CWCA. In response, Chatterton moved to dismiss the complaint under C.R.C.P. 12(b)(5), asserting that GAMI's claims failed as a matter of law because the separation agreement was unenforceable under the CWCA's anti-waiver provision, section 8-4-121, C.R.S. 2025, which voids any agreement purporting to waive or modify an employee's right to recover unpaid (but earned) compensation from an employer.

¶ 10 The trial court denied the motion to dismiss, and the case proceeded to a one-day bench trial. After trial, the court issued a detailed written order finding that the employment agreement was effective upon signing and that Chatterton was never paid his annual base salary of $560,000. It also agreed with Chatterton that the separation agreement was void under the CWCA because

Chatterton couldn't waive his wage claim in a separate agreement. The court dismissed GAMI's complaint and allowed arbitration to proceed. GAMI now appeals.

## II.    Analysis

¶ 11    GAMI contends that the trial court erred by finding that the CWCA's anti-waiver provision rendered the separation agreement void. We disagree.

### A.    Standard of Review and Applicable Law

¶ 12    We review the trial court's interpretation of contract terms de novo. *Cagle v. Mathers Fam. Tr.*, 2013 CO 7, ¶ 16.

¶ 13    We also review questions of statutory interpretation de novo. *Hobbs v. City of Salida*, 2025 CO 50, ¶ 11. Our primary task when interpreting a statute is to "discern and effectuate the legislature's intent 'by construing the statute as a whole, "giving consistent, harmonious, and sensible effect to all of the statute's parts."'" *Id.* (quoting *Burnett v. State Dep't of Nat. Res.*, 2015 CO 19, ¶ 12). We start by looking to the plain language of the statute to determine if the statute is ambiguous. *Banner Health v. Gresser*, 2025 CO 60M, ¶ 12. If the statute is unambiguous, we apply it as written. *Hobbs*, ¶ 12. If the statute is ambiguous, we then look to other aids of

statutory interpretation to determine the legislature's intent. *Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 13.

¶ 14    The purpose of the CWCA is "to protect employees from exploitation, fraud, and oppression," *303 Beauty Bar LLC v. Div. of Lab. Standards & Stat.*, 2025 COA 20, ¶ 14, and "to assure the timely payment of wages and to afford adequate judicial relief when wages are not paid," *Hartman v. Cmty. Resp. Ctr., Inc.*, 87 P.3d 202, 207 (Colo. App. 2003). The CWCA is remedial and "must 'be liberally construed to carry out its purpose.'" *Nieto*, ¶ 27 (quoting *Montemayor v. Jacor Commc'ns, Inc.*, 64 P.3d 916, 923 (Colo. App. 2002)).

¶ 15    The CWCA requires immediate payment for "wages or compensation for labor or service earned, vested, determinable, and unpaid at the time of such discharge," § 8-4-109(1)(a), C.R.S. 2025, and "nullifies any effort to circumvent its requirements by contract," *Nieto*, ¶ 14. To that end, the CWCA's anti-waiver provision voids "[a]ny agreement, written or oral, by any employee purporting to waive or to modify such employee's rights in violation of" the CWCA. § 8-4-121; *see Lambdin v. Dist. Ct.*, 903 P.2d 1126, 1129 (Colo. 1995) ("[Section 8-4-121], by its plain language, voids any

7

agreement that constitutes a waiver or modification of an employee's rights under the Wage Claim Act.").

¶ 16    "For purposes of the CWCA, compensation is earned 'if it is vested pursuant to an employment agreement at the time of an employee's termination.'" *Fang v. Showa Entetsu Co.*, 91 P.3d 419, 422 (Colo. App. 2003) (quoting *Barnes v. Van Schaack Mortg.*, 787 P.2d 207, 209 (Colo. App. 1990)) (noting that Black's Law Dictionary 1557 (7th ed. 1999) defines vested as a "completed consummated right for present or future enjoyment; not contingent; unconditional; absolute").  The CWCA doesn't create a substantive right to compensation for labor and services performed; rather, it "establishes minimal requirements concerning when and how *agreed* compensation must be paid and provides remedies and penalties for an employer's noncompliance with those requirements." *Barnes*, 787 P.2d at 210.  "The employee's substantive right to compensation and the conditions that must be satisfied to earn such compensation remain matters of negotiation and bargaining, and are determined by the parties' employment agreement, rather than by the statute." *Id.*

### B. The Trial Court Did Not Err by Finding that the Separation Agreement was Void

¶ 17 GAMI contends that, based on the plain language of the CWCA's anti-waiver provision, the separation agreement isn't void because the anti-waiver provision only voids agreements that violate rights conferred by the CWCA. According to GAMI, the separation agreement didn't waive or modify Chatterton's rights under the CWCA. Rather, by signing the separation agreement, Chatterton agreed that GAMI had already paid him all compensation owed and didn't owe him *additional* wages. In exchange, GAMI agreed to release Chatterton from any liability for misappropriating company funds. Thus, GAMI claims the separation agreement wasn't void under the CWCA because it acted as a "settlement" agreement whereby Chatterton agreed that GAMI owed him no additional wages beyond what GAMI had already paid. GAMI's argument is flawed and misapprehends the purpose of the CWCA.

¶ 18 Under section 8-4-109(1)(a), an employee has the right to earned but unpaid wages at the time of termination. GAMI correctly points out that the CWCA doesn't create a substantive right to compensation for labor and services performed, but GAMI

9

overlooks the function of the CWCA, which is to provide a means to ensure when and how agreed-upon compensation must be paid.

¶ 19    GAMI asserts that the trial court erred by considering whether Chatterton may have had claims for past due wages under the employment agreement because that issue wasn't before the court and thus shouldn't have informed the court's conclusion that the separation agreement was void.[2]  GAMI contends that the court should have focused only on whether Chatterton was due additional wages under the separation agreement.  GAMI's argument is misplaced.

¶ 20    Per the employment agreement, the parties agreed that GAMI would pay Chatterton an annual base salary of $560,000.  GAMI

---

[2] GAMI also argues that the trial court should have never considered the employment agreement because it wasn't properly admitted into evidence.  We aren't persuaded.  Although the employment agreement wasn't formally admitted into evidence, it was filed multiple times as an attachment to several pleadings, witness testimony established the terms of the agreement, it was discussed at length at trial, and it was properly before the court. *See Sakal v. Donnelly*, 494 P.2d 1316, 1317 (Colo. App. 1972) (Because the pieces of evidence in question were filed prior to trial and were before the court, "[i]t was unnecessary under these circumstances for the admissions to be formally offered and received into evidence during the trial before they could be considered by the trial court . . . [and] would . . . require a meaningless formality.").

conceded — and the trial court found — that for the duration of his employment Chatterton was paid (at most) $120,000. *See Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 512 (Colo. App. 2006) ("We will not disturb factual determinations made by the trial court, so long as they are supported by the record.").

¶ 21    Recall that compensation is earned if it has vested pursuant to an employment agreement at the time of an employee's termination. *Fang*, 91 P.3d at 422. "Wages" or "compensation" are "[a]ll amounts for labor or service performed by employees," § 8-4-101(14)(a)(I), C.R.S. 2025. Here, the employment agreement set a fixed annual amount of $560,000 that, if unpaid and earned, Chatterton was entitled to at the time of his termination. *See Nieto*, ¶ 14 ("Among other things, [the CWCA] requires that an employer shall . . . pay, upon separation from employment, all earned but unpaid compensation . . . ."); *Barnes*, 787 P.2d at 210 (The CWCA "establishes minimal requirements concerning when and how *agreed* compensation must be paid.").

¶ 22    The CWCA creates a remedy for employees seeking past due compensation and doesn't permit waiver of those remedies. *Lambdin*, 903 P.2d at 1127. The anti-waiver provision is

unambiguous and voids "[a]ny agreement, written or oral, by any employee purporting to waive or to modify such employee's rights" in violation of the CWCA. § 8-4-121; *see Lambdin*, 903 P.2d at 1129.

¶ 23    Chatterton's agreed-upon salary couldn't be forfeited once earned. *See Nieto*, ¶¶ 3, 42 (holding that a provision of an employee handbook forfeiting earned but unused vacation pay is void under section 8-4-121 because "when an employer chooses to provide such pay, it cannot be forfeited once earned by the employee"). It is GAMI's obligation, as an employer, under the CWCA to pay unpaid wages, and Chatterton cannot waive GAMI's obligation. *See Fang*, 91 P.3d at 421 ("An employer is liable under the CWCA if the employer does not pay an employee wages he or she earned at the time of discharge."). Therefore, any agreement between GAMI and Chatterton that purported to waive Chatterton's ability to recover any portion of his unpaid wages violated his rights under the CWCA.

¶ 24    The separation agreement released GAMI, in relevant part, from "all claims related to . . . [Chatterton's] compensation . . . including salary [and] wages" and claims arising under the CWCA.

12

This is exactly the type of situation that the CWCA's anti-waiver provision is meant to prevent. *See Nieto*, ¶ 14 (recognizing that the CWCA's anti-waiver provision "nullifies any effort to circumvent [the CWCA's] requirements by contract"). Because the release of claims provision of the separation agreement purported to waive Chatterton's ability to recover his earned but unpaid salary, the court didn't err by finding that the separation agreement was void.

¶ 25 Likewise, we aren't persuaded by GAMI's argument that Chatterton wasn't due any outstanding compensation because, by signing the separation agreement, Chatterton agreed that he had "been paid all compensation owed and for all hours worked." This language characterizes Chatterton's unpaid salary as "additional" wages and is unavailing because, as already explained, the separation agreement impedes Chatterton's right to pursue his remedies under the CWCA. Moreover, by asserting that Chatterton agreed that "no additional wages were in fact due," GAMI is using Chatterton's unpaid (but earned) wages as leverage against him, which is exploitative and precisely the type of behavior that the CWCA intended to curb. *See Cagle*, ¶ 36 ("The CWCA is 'designed to require employers to make timely payment of wages . . . and to

provide adequate judicial relief when employers fail to pay wages when due.'" (citation omitted)).

¶ 26     Finally, GAMI argues that the CWCA's anti-waiver provision shouldn't extend to post-separation agreements. But the CWCA's anti-waiver provision states that "[*a*]*ny* agreement" waiving or modifying the employee's rights is void. § 8-4-121 (emphasis added). "[W]e do not add words to or subtract words from a statute," *People ex rel. Rein v. Meagher*, 2020 CO 56, ¶ 22, and "where the plain language is unambiguous," as it is here, "we apply the statute as written," *Nieto*, ¶ 12. The legislature chose to use the word "any." "[W]e respect the legislature's choice of language," *Rein*, ¶ 22, and "presume that the legislature did not use language idly," *Nieto*, ¶ 21. *See Colo. State Bd. of Acct. v. Raisch*, 931 P.2d 498, 500 (Colo. App. 1996) ("The term 'any' is an inclusive term often used synonymously with the terms 'every' and 'all.'"), *aff'd*, 960 P.2d 102 (Colo. 1998). The statute is clear; it voids "any agreement" that purports to waive or modify an employee's rights in violation of the CWCA.

¶ 27     Accordingly, the court didn't err by finding that the separation agreement was void and dismissing GAMI's complaint.

14

## III.  Disposition

We affirm the judgment.

JUDGE PAWAR and JUDGE SULLIVAN concur.